UNITED STATES of America, Plaintiff–Appellee,

v.

Bedina COLEMAN, Defendant–Appellant.

No. 92–6356.

United States Court of Appeals, Tenth Circuit.

Oct. 26, 1993.

John E. Green, U.S. Atty., Kim Taylor, Asst. U.S. Atty., Leslie M. Kaestner, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Todd Markum, Oklahoma City, OK, for defendant-appellant.

Before BRORBY, BARRETT, and KELLY, Circuit Judges.

BRORBY, Circuit Judge.

Ms. Bedina Coleman was convicted of five drug-related counts including conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (1988), unlawful interstate travel with the intent to distribute cocaine in violation of 18 U.S.C. § 1952(a)(3) (1988), and three counts of distribution in violation of 21 U.S.C. § 841(a)(1) (1988). Ms. Coleman appeals on the following grounds: (1) sufficiency of the evidence supporting the convictions; (2) improper and prejudicial closing arguments by the prosecution and counsel for a co-defendant; and (3) sentencing errors. We affirm.

This case involved a large-scale organization devoted to transporting cocaine and cocaine base from Houston to Oklahoma City, where it was then distributed.[1] The evidence establishes that Ms. Coleman was a latecomer to this conspiracy and aided it both by transporting cocaine base from Houston to Oklahoma City and by participating in the distribution of the cocaine after it reached Oklahoma City.

## I

### Sufficiency of the Evidence

■ Ms. Coleman first challenges the sufficiency of the evidence supporting her conspiracy conviction. Ms. Coleman asserts she began her activities with the conspiracy participants two years after the drug distribution business had commenced and her activities lasted but a short time until she was arrested, some six months prior to the conspiracy's termination. Ms. Coleman argues that participation in a small part of the conspiracy does not establish she joined the conspiracy. She further asserts she had "very little interaction" with most of the conspirators. In short, Ms. Coleman concedes a conspiracy to distribute cocaine existed, but asserts the evidence is insufficient to show she was a part of that conspiracy.

There is no question that a conspiracy to distribute cocaine in Oklahoma City did indeed exist. *See Angulo-Lopez,* 7 F.3d at 1511, slip op. at 10. The question instead is the extent of Ms. Coleman's involvement in that conspiracy.

■ In reviewing Ms. Coleman's claim, we "view the evidence—both direct and circumstantial, together with all reasonable inferences to be drawn therefrom—in the light most favorable to the government." *United States v. Rangel-Arreola,* 991 F.2d 1519, 1521 (10th Cir.1993) (quoting *United States v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986)). The elements necessary to establish a drug conspiracy are as follows:

(1) the defendant and one or more persons agreed to violate federal narcotics law, (2) the defendant knew at least the essential objectives of the conspiracy, (3) the defen-

---

1. *See United States v. Angulo-Lopez,* 7 F.3d 1506 (10th Cir.1993).

dant knowingly and voluntarily became a part of the conspiracy, and (4) interdependence existed among the defendant and his or her alleged coconspirators.

*Id.* at 1522. "By necessity, the government may establish these elements by direct or circumstantial evidence." *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). In evaluating the evidence, however, "we are mindful that the conspiracy doctrine is inherently subject to abuse and ... [we] must be careful to guard against guilt by association." *Id.*

The record shows the jury heard the following evidence. Ms. Coleman was the common law wife of Norman Preciado–Quinonez, a member of the cocaine conspiracy. *See United States v. Preciado,* No. 92–6371, Order & Judgment, 1993 WL 430336 (10th Cir. Oct. 26, 1993). In September 1991, Ms. Coleman was hired to take the place of Brenda Johnson whose duties were to transport cocaine from Houston to Oklahoma City, help Teresa Griffin with the deliveries, and then transport the cash proceeds back to Juan Carlos Angulo–Lopez in Houston. Ms. Johnson was paid $500 to $700 per trip plus expenses. Ms. Coleman was observed making three deliveries with Teresa Griffin, during which time she was carrying large shopping bags. Another witness testified that Ms. Coleman and her husband carried sacks into the places where drug transactions occurred and Ms. Coleman was involved in drug deals with Juan Carlos Angulo–Lopez. Mr. Gonzalez testified to purchasing a kilogram of cocaine from Juan Carlos Angulo–Lopez for $20,000 and Ms. Coleman was carrying the cocaine for the seller. Mr. Gonzalez also testified concerning two additional one-kilogram purchases of cocaine from Mr. Angulo–Lopez when Ms. Coleman was present. Additionally, Ms. Coleman was arrested on October 21, 1991 at the airport with Teresa Griffin after having transported and delivered another large quantity of cocaine. Ms. Coleman and Ms. Griffin had $38,000 in cash with them at the airport which they were transporting back to Houston.

Viewing this evidence in the light most favorable to the Government, several factors become clear. Ms. Coleman voluntarily joined an ongoing conspiracy to transport and distribute cocaine. Her participation in the conspiracy was vital to its success and she was most likely paid for her services. Ms. Coleman made multiple excursions between Houston and Oklahoma City during which she transported both cocaine and the proceeds from the sale of the cocaine. Her participation in this conspiracy lasted at least two months until her arrest. She knew, associated with, and inferentially followed the orders of the conspiracy's two principals, Juan Carlos Angulo–Lopez and Teresa Griffin, by assisting in the transportation and distribution of cocaine. For these reasons, we hold there exists sufficient evidence to enable a reasonable jury to find, beyond a reasonable doubt, that Ms. Coleman was guilty of conspiring to distribute cocaine.

The fact the drug distribution conspiracy was in operation nearly two years prior to Ms. Coleman's voluntary joinder and remained in operation nearly six months following Ms. Coleman's arrest, has little to do with her guilt. "It is fundamental that 'a party may join an ongoing conspiracy during its progress and become criminally liable for all acts done in furtherance of the scheme.'" *United States v. Dickey,* 736 F.2d 571, 585 (10th Cir.1984) (quoting *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir.1978)), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Ms. Coleman knowingly joined an active drug distribution ring and actively participated therein.

Ms. Coleman contends the evidence is insufficient to support the remaining four counts of conviction arguing the evidence fails to show she had the knowledge that drugs were being possessed, transported, and distributed. The evidence previously discussed, and the natural inferences flowing therefrom, would enable any reasonable jury to conclude Ms. Coleman knew she was in the cocaine distribution business.

## II

### Drug Quantities at Sentencing

"In order to impose a sentence based on a quantity of drugs, the trial court's

factual findings must be determined by a preponderance of the evidence." *United States v. Molina–Cuartas,* 952 F.2d 345, 348 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992). Such factual findings are reviewed for clear error. *United States v. Wagner,* 994 F.2d 1467, 1472 (10th Cir.1993); *Powell,* 982 F.2d at 1435. If the quantity of drugs is estimated, it must be based upon information which has a minimum indicia of reliability. *Powell,* 982 F.2d at 1435.

Ms. Coleman asserts that the various charges against her collectively alleged a total of only one-half kilogram.[2] She argues that had she been involved with more than one-half kilogram, the Government would have charged her with the greater quantity. Ms. Coleman was sentenced on a base offense level applicable to charges involving five to fifteen kilograms of cocaine base. *See* U.S.S.G. § 2D1.1(a)(3) and (c)(2) (1991).

■ The basic thrust of Ms. Coleman's argument is that she should only be sentenced for the quantity of drugs set forth in the charge for which she was convicted. This argument is clearly incorrect because "[a] defendant is accountable for the quantity of drugs [that are] within the scope of the conspiracy and reasonably foreseeable." *Powell,* 982 F.2d at 1435; *see also* U.S.S.G. § 1B1.3, comment. (n. 1) (1991). Taking into consideration the level of Ms. Coleman's involvement in the conspiracy, the cocaine base distributed during Ms. Coleman's active participation in the conspiracy was clearly and reasonably foreseeable. *See Powell,* 982 F.2d at 1435.

■ Ms. Coleman also argues that since she was a latecomer to the conspiracy, she should not be "responsibl[e] for all the past quantities." Ms. Coleman contends she was involved in the conspiracy in September 1991 at the earliest. Apparently, Ms. Coleman believes she is being charged with quantities

of cocaine which were part of the conspiracy prior to September 1991.

At sentencing, the trial judge reviewed Ms. Coleman's objection to the presentence report recommendation of a drug quantity of twenty-two kilograms. Apparently twenty kilograms were added because Ms. Coleman was considered an active participant for the full term of the conspiracy. We have recognized that "[w]hen several defendants are convicted of conspiracy, the relevant conduct for purposes of sentencing 'is not necessarily the same for every participant.'" *United States v. Reid,* 911 F.2d 1456, 1461–62 (10th Cir.1990) (quoting U.S.S.G. § 1B1.3 comment. (n. 1)), *cert. denied,* 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). The Guidelines require examination of the scope of the defendant's agreement to undertake joint activity and of the reasonable foreseeability of co-conspirators' criminal conduct. Since the sentencing court ultimately did not adopt the twenty-two kilogram drug quantity in calculating the base offense, however, we need not examine whether relevant conduct of other members of the conspiracy were improperly attributed to Ms. Coleman.[3]

The record indicates that during September–October of 1991, Ms. Coleman was directly involved in at least four separate excursions between Houston and Oklahoma City to transport and distribute cocaine, "bringing in 1 to 3 kilograms of cocaine base per trip." At the time of her arrest, Ms. Coleman was specifically linked with two kilograms she had assisted in transporting. The sentencing court, then, had reliable grounds to find a drug quantity between five and fifteen kilograms represented Ms. Coleman's association with the conspiracy. This determination is not clearly erroneous.

## III

### Improper Closing Argument

Ms. Coleman's final contention is the trial court committed error by failing to grant her

---

2. It is difficult to determine exactly how Ms. Coleman calculated a figure of one-half kilogram. Not including the conspiracy charge, Ms. Coleman concedes she was convicted for distributing one kilogram of cocaine plus fifteen ounces of cocaine base.

3. Similarly, we need not address the issue raised by Ms. Coleman concerning liability for drugs which were part of the conspiracy prior to her participation. *See United States v. Matthews,* 942 F.2d 779, 784 (10th Cir.1991).

motion for mistrial based upon the improper closing arguments of one of the defense counsel and of the prosecutor.

■ At trial, each of the six defendants was represented by different counsel. One of the alleged prejudicial statements was made during closing argument by counsel for co-defendant Mr. Martinez–Perez:

> Now, I hope that you got to learn a little bit about Danilo Martinez from his testifying, *and that sets him apart,* also, because you've got to understand a little bit of what it's like to be—to be an illegal alien, to have to work in the underground culture, painting apartments, mowing grass, and things of that nature, to make a living; and you notice how he always knew what little money he had, and he always knew what he had, how he could spend it. He very carefully saved his money.

(Emphasis added.) No objections were made to this argument at the time it was presented.

■ The prosecutor's alleged prejudicial remark was made in response to comments by defense counsel. During closing arguments, four of the six defense counsel made references to the Government's failure to produce evidence during the course of the trial. For example, counsel for co-defendant Teresa Griffin stated: "if all those agents down there [in Houston] had [the evidence], they would have brought it here and you would have heard it"; counsel for co-defendant Ricorte Angulo–Lopez stated "the government didn't bring that evidence in"; counsel for co-defendant Norman Preciado–Quinonez stated: "they could have presented [important witnesses] but we didn't get to hear them. I wonder why"; and counsel for the defendant Ms. Coleman stated: "Where was Mr. B? How come Mr. B. wasn't here to testify …?" During rebuttal, the prosecutor replied to the arguments of defense counsel as follows:

> Several of the defense counsel complained that there were witnesses that weren't called or things not done. Each of these defense counsel have the same right to subpoena any witness they want to come into this courtroom. If those witnesses had had something to say on behalf of

their client, those witnesses would have taken the stand.

At this point, counsel for the defendants approached the bench and each made a motion for mistrial based upon the prosecutor's closing argument and upon the remark made earlier by defense counsel. The trial court's initial response was to ask the prosecutor: "What can you be thinking of to make a comment like that?" The trial judge concluded, however, he was confident a curative instruction would suffice and instructed the jury as follows:

> Members of the jury, let me interrupt just a moment to remind you of a very important instruction that I have given you even from the first day in which we undertook to select a jury in this trial. You'll remember it, because I have given it more than [once], and it is so important that I want to give it to you again, lest there be any misunderstanding about it from words used either by Ms. Kaestner in her argument or by defense counsel yesterday. And it is this:

> There's been some reference to a defendant testifying where others did not, or calling witnesses or not calling witnesses. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or to call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses. Neither does a defendant's silence affect or shift the government's burden of proving such defendant's guilt beyond a reasonable doubt, and the same is true if the defendant elects not to call any witnesses or put on any evidence.

> So any comments that have been made by either the defense counsel or by government's counsel should in no way confuse you on the solemn, important constitutional protection that I've just explained to you. It is in no way to permit an inference

of guilt for having remained silent personally or not called any witnesses. It's just a choice that everyone has in this country, and we are very careful to protect it. So don't let any reference to any of that cause you to be in the least way confused on the important instruction that I have just given you again.

 A trial court's decision to deny a defendant's motion for mistrial is reviewed under the abuse of discretion standard. *United States v. Sands*, 968 F.2d 1058, 1063 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993); *United States v. Novak*, 918 F.2d 107, 108 (10th Cir.1990). We will reverse the trial court only if we find there was a clear error of judgment or if the trial court exceeded the range of permissible choices. *Novak,* 918 F.2d at 108–09.

Reviewing the situation before us we find both defense counsel and the prosecution came perilously close to commenting upon the defendants' failure to take the stand. Both comments were improper. A comment by the prosecution concerning a defendant's Fifth Amendment right to remain silent can be grounds for reversal. *Twyman v. Oklahoma,* 560 F.2d 422, 424 (10th Cir.1977), *cert. denied,* 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774 (1978). "The primary question before us is whether the comments ... were so prejudicial as to deprive any appellant of his Sixth Amendment right to a fair trial." *Dickey,* 736 F.2d at 595.

After reviewing the prosecution's and defense counsel's statements in the context of the full record, we fail to see how these brief remarks had any impact on the outcome of this trial or somehow deprived Ms. Coleman of a fair trial. The trial court, who was in a position to observe the jury and gauge its reaction to the arguments, was of the opinion that a curative instruction would

solve any problem which might have been created, and we agree. The trial court immediately proceeded to correctly and thoroughly instruct the jury concerning defendants' rights not to testify. Furthermore, the trial court had previously given the jury similar instructions. A principal tenet of jurisprudence is that jurors are presumed to follow the law. Although egregious circumstances may arise where a counsel's remarks may irreversibly taint a jury, this is not such a case. Therefore, the trial court did not abuse its discretion in denying defendants' motions for mistrial.[4]

**AFFIRMED.**

---

4. No one asserts that either comment was made in bad faith or with improper motives. It is important to note that the prosecutor was responding to defense counsel's arguments. Prosecutors are generally given "considerable latitude" in responding to an argument raised by opposing counsel. *Dickey,* 736 F.2d at 596; *San-* *chez v. Heggie,* 531 F.2d 964, 967 (10th Cir.), *cert. denied,* 429 U.S. 849, 97 S.Ct. 135, 50 L.Ed.2d 122 (1976). Although this rule should not be construed as opening the door to improper comments, it is relevant in demonstrating the prosecutor's good faith.