9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Norman PRECIADO, true name Norman Preciado-Quinonez,
Defendant-Appellant.
 No. 92-6371.
 United States Court of Appeals, Tenth Circuit.
 Oct. 26, 1993.
 
 ORDER AND JUDGMENT[1]
 Before BRORBY, BARRETT, and KELLY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Preciado-Quinonez was convicted of seven drug-related charges, consisting of one count of conspiracy to distribute cocaine, three counts of distributing cocaine, two counts of interstate travel in the distribution of cocaine, and one count of manufacturing cocaine base. He was sentenced, inter alia, to 360 months. Mr. Preciado-Quinonez appeals on four grounds: (1) sufficiency of the evidence as to the conspiracy charge; (2) improper and prejudicial closing argument; (3) constitutionality of the sentencing differential between cocaine powder and base as applied to blacks; and (4) the erroneous quantity of drugs attributed to his conduct for sentencing purposes. We affirm.
 
 
 3
 Mr. Preciado-Quinonez was the husband of Bedina Coleman.[2] Both were involved in a conspiracy to transport cocaine to the Oklahoma City area where it was distributed.[3] The seven counts of conviction all arise from these activities.
 
 
 4
 * Sufficiency of the Evidence
 
 
 5
 Mr. Preciado-Quinonez challenges the sufficiency of the evidence supporting the conspiracy charge. Mr. Preciado-Quinonez implicitly concedes the existence of a conspiracy to transport and distribute cocaine, but specifically asserts the evidence is lacking to show that he joined the conspiracy or that his conduct was interdependent.
 
 
 6
 In reviewing Mr. Preciado-Quinonez' claim, we "view the evidence--both direct and circumstantial, together with all reasonable inferences to be drawn therefrom--in the light most favorable to the government.' " United States v. Rangel-Arreola, 991 F.2d 1519, 1521 (10th Cir.1993) (quoting United States v. Hooks, 780 F.2d 1526, 1529 (10th Cir.), cert. denied, 475 U.S. 1128 (1986)). The elements necessary to establish a drug conspiracy are as follows:
 
 
 7
 (1) the defendant and one or more persons agreed to violate federal narcotics law, (2) the defendant knew at least the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily became a part of the conspiracy, and (4) interdependence existed among the defendant and his or her alleged coconspirators.
 
 
 8
 Id. at 1522.
 
 
 9
 The record reveals substantial evidence from which a reasonable jury could have found Mr. Preciado-Quinonez voluntarily and knowingly joined the conspiracy and that his conduct, as well as that of the other participants, was interdependent. Mr. Scruggs, a seller of cocaine for the conspirators, testified that he was introduced to Mr. Preciado-Quinonez by the ringleader, Juan Carlos Angulo-Lopez; Mr. Preciado-Quinonez was with Mr. Angulo-Lopez while he was cooking cocaine into crack; and Mr. Preciado-Quinonez obtained a key to the apartment used by the ringleader to cook and distribute cocaine. Mr. Vernon King, also a distributor of cocaine for the conspiracy, testified Mr. Preciado-Quinonez was present when the ringleader sold and delivered cocaine; that Mr. Preciado-Quinonez was in business with the ringleader "to distribute cocaine"; that he assisted Mr. Preciado-Quinonez and the ringleader's brother in selling cocaine and that Mr. Preciado-Quinonez sometimes received the money for the cocaine. Mr. King further testified that he believed Mr. Preciado-Quinonez, Juan Carlos Angulo-Lopez, Teresa Griffin, and Mr. Preciado-Quinonez' wife were all involved in the cocaine business together. Ms. Johnson, who was hired to transport cocaine, testified that the ringleader's home was kept in the name of Mr. Preciado-Quinonez. Another witness, Joan Patterson, testified that Teresa Griffin picked up Mr. Preciado-Quinonez and his wife at a motel and that later they were involved in drug deals with the ringleader. Another member of the conspiracy, Juan Carlos Gonzalez, testified that he received a kilogram of cocaine from Mr. Preciado-Quinonez and that Mr. Preciado-Quinonez was involved in other drug transactions. Other witnesses testified to similar conduct including the fact that Mr. Preciado-Quinonez helped the ringleader cook the cocaine into crack and helped teach the ringleader's brother how to cook cocaine. This evidence is sufficient to establish that Mr. Preciado-Quinonez knowingly and voluntarily joined and participated in the conspiracy and that his conduct was interdependent with that of the other conspirators.
 
 II
 Improper Closing Argument
 
 10
 Mr. Preciado-Quinonez claims the district court erred by not granting his motion for mistrial based upon improper remarks by the prosecutor and one of the defense attorneys during closing argument. The same issue was raised by a co-defendant and decided in Coleman, --- F.2d at ---- (slip op. at 12). For the reasons set forth in Coleman, we hold the district court did not abuse its discretion in denying Mr. Preciado-Quinonez' motion for mistrial.
 
 III
 
 11
 Constitutionality of Applicable Sentencing Guidelines
 
 
 12
 Mr. Preciado-Quinonez next contends the sentencing disparity between cocaine power and base violates his Equal Protection rights guaranteed by the Fifth Amendment by discriminating against black defendants, and further violates the Eighth Amendment's prohibition against cruel and unusual punishment. These same claims were raised and addressed in Angulo-Lopez. Because we upheld the constitutionality of the applicable Sentencing Guidelines provisions, no further discussion is necessary.
 
 IV
 Drug Quantities for Sentencing
 
 13
 Mr. Preciado-Quinonez' final claim involves the quantity of drugs applied to his sentencing under the Guidelines. The presentence report computed Mr. Preciado-Quinonez' base offense level by applying thirty kilograms of cocaine base to the Sentencing Guidelines as at least that quantity was transported, processed, and distributed during the operation of the conspiracy. Under the Sentencing Guidelines, "[a] defendant is accountable for the quantity of drugs within the scope of the conspiracy and reasonably foreseeable." United States v. Powell, 982 F.2d 1422, 1435 (10th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993). In computing the quantity of drugs to be applied to a defendant's sentence under the Guidelines, we accept the district court's findings unless clearly erroneous. Id.
 
 
 14
 Mr. Preciado-Quinonez initially objected to the quantity of drugs for which he was held responsible by stating only that the amount failed to "reflect the true and accurate amount." The presentence report responded to this by stating:
 
 
 15
 The cocaine base amounts noted ... are a very conservative estimate. The defendant was involved ... when Brenda Johnson transported at least 20 kilograms of cocaine base to Oklahoma City. The defendant was involved when Brent Smiley transported 10 kilograms of cocaine base to Oklahoma City.
 
 
 16
 At the sentencing hearing, which was conducted by the trial judge, counsel for Mr. Preciado-Quinonez clarified his objection to the drug quantity by stating that his client was not involved in transporting drugs to and from Houston and consequently should not be accountable for those drugs. The prosecuting attorney responded by outlining the testimony concerning Mr. Preciado-Quinonez' involvement in cooking cocaine; his close association with the Colombians who ran the drug ring; and the trial evidence establishing the facts recited in the presentence report as well as the enormous quantities involved during Mr. Preciado-Quinonez' association with the conspiracy. In response, counsel for Mr. Preciado-Quinonez attacked the credibility of the trial witnesses and argued, in a conclusory fashion, that thirty kilograms were not foreseeable. No further evidence was offered. The court then sentenced based upon the information in the presentence report.
 
 
 17
 On appeal, Mr. Preciado-Quinonez argues that he did not join the conspiracy until September 1991 and cannot therefore be responsible for the courier activities of Brenda Johnson who withdrew from the conspiracy in September 1991.
 
 
 18
 The record does not clearly support Mr. Preciado-Quinonez' argument. Although Brenda Johnson testified that Mr. Preciado-Quinonez took her place as a drug courier after she quit the conspiracy in September 1991, that does not mean Mr. Preciado-Quinonez was not involved in the conspiracy at an earlier time. In fact, Ms. Johnson testified that in the latter part of 1990, the ringleader of the conspiracy lived in a house which was under Mr. Preciado-Quinonez' name. Vernon King also testified that Mr. Preciado-Quinonez was involved in selling cocaine in July 1991, and first met Mr. Preciado-Quinonez in December of 1990. Thus, there exists sufficient evidence to support the trial court's conclusion that Mr. Preciado-Quinonez was involved in the conspiracy prior to September 1991. Moreover, there exists ample evidence of other large quantities of cocaine base processed, transported, and distributed during and after September 1991 which exceeds the fifteen-kilogram threshold necessary for a base offense level of forty-two, the offense level which Mr. Preciado-Quinonez was sentenced for under the Guidelines. See U.S.S.G. 2D1.1(c), (Drug Quantity Table) (1991).
 
 
 19
 The sentencing court's decision as to the foreseeable quantity of drugs involved during Mr. Preciado-Quinonez' active participation in the conspiracy is supported by substantial evidence and is not clearly erroneous.
 
 
 20
 The judgment and sentence of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 See United States v. Coleman, --- F.2d ---- (No. 92-6356) (10th Cir. Oct. 26, 1993
 
 
 [3]
 See United States v. Angulo-Lopez, --- F.2d ---- (No. 92-6370) (10th Cir. Oct. 26, 1993)