25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Chadwick CESTNIK, Defendant-Appellant.
 No. 93-8063.
 United States Court of Appeals, Tenth Circuit.
 May 17, 1994.
 
 1
 Before TACHA and EBEL, Circuit Judges, and SAM, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 SAM, District Judge.
 
 
 4
 Defendant and Appellant Chadwick Cestnik (Chadwick) appeals his conviction of conspiracy to distribute marijuana, in violation of 21 U.S.C. Sec. 846, in the District Court for the District of Wyoming. We affirm.
 
 FACTUAL BACKGROUND
 
 5
 In 1986, Chadwick's uncle Ronald Cestnik (Ronald) and Joe Newman moved from Rock Springs, Wyoming to Laredo, Texas to work in the oil business. However, while in Texas, they met Miguel A. Montemayor and Michael Hughes who became their contacts in supplying marijuana. Ronald and Newman then returned to Wyoming but began routine travel to Texas to purchase marijuana. The drugs would be driven to Rock Springs and distributed to drug dealers in the Wyoming area. Trial testimony indicated that Chadwick was a dealer who sold marijuana for Ronald. Ronald and Newman continued this operation until 1988 when they split up. Ronald then moved to Casper, Wyoming but continued his drug activities.
 
 
 6
 In 1987, Chadwick, then a juvenile, was arrested with two of his juvenile friends for possession of marijuana. Trial testimony indicated the youths obtained the drugs from Ronald and Newman, and Ronald was worried about the effect Chadwick's arrest would have on Ronald's drug operations. All three youths served a period of supervised probation under the jurisdiction of the juvenile court.
 
 
 7
 In 1991, the Wyoming Division of Criminal Investigation and the Drug Enforcement Administration intercepted Ronald's telephone lines as part of an investigation of Ronald and his suspected drug and money laundering activities. As a result, agents learned about Ronald's marijuana distribution network. Agents recorded two telephone calls from Chadwick to Ronald during which Chadwick asked Ronald for drugs, referred to Ronald's Texas marijuana suppliers by the code name of "little brothers," and complained about the quality of marijuana he had received from Ronald. Subsequently, Ronald, Chadwick, and others were arrested.
 
 
 8
 Chadwick was charged with conspiracy to distribute marijuana. During his trial, James Robinson, who had transported marijuana for Ronald, testified that Ronald told him Chadwick was a good marijuana salesman. Newman testified Chadwick had solicited help from Ronald and him in obtaining payment from one of Chadwick's drug customers. Chadwick was convicted by a jury and received a sentence of 78 months of incarceration, followed by four years of supervised release. Chadwick now appeals his conviction and sentence.
 
 ANALYSIS
 
 9
 On appeal, Chadwick first argues the trial court erred in admitting as evidence during trial his 1987 arrest and statements by his coconspirators. He also claims there was insufficient evidence to establish his participation in a conspiracy. Finally, Chadwick contends the trial court erred in calculating the drug quantity attributed to him for sentencing purposes.
 
 1. Evidentiary Rulings
 
 10
 A trial court's evidentiary rulings are reviewed under an abuse of discretion standard. See United States v. McIntyre, 997 F.2d 687, 698 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 736 (1994); accord United States v. Parra, 2 F.3d 1058, 1068 (10th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 639 (1993). However, "[d]eference to the trial judge is heightened when reviewing rulings on questions of the admissibility of hearsay evidence." McIntyre, 997 F.2d at 698; accord Parra, 2 F.3d at 1068. The appellate court must review the record as a whole when examining evidentiary rulings. See McIntyre, 997 F.2d at 698.
 
 
 11
 a. Admission of 1987 arrest
 
 
 12
 Chadwick filed a motion in limine, seeking to prevent the government from introducing evidence of his 1987 arrest during his trial as irrelevant, unfairly prejudicial, and inadmissible under Rule 404 of the Federal Rules of Evidence. The trial court denied the motion. On appeal, Chadwick again argues this evidence constitutes an inadmissible prior bad act.
 
 
 13
 The government notes Chadwick was charged with membership in a conspiracy to distribute marijuana which lasted from about December 1985 until about October 1991. Therefore, the government claims, any acts Chadwick committed during that time frame in furtherance of the drug conspiracy may be introduced at trial as direct evidence of the conspiracy. It is, thus, the government's position that Chadwick's 1987 arrest was not admitted as evidence of a prior bad act under Rule 404 but as direct, relevant evidence of Chadwick's drug activity in furtherance of the conspiracy.
 
 
 14
 Trial testimony revealed that, on the date he was arrested, Chadwick was seen near the residence of Frank Cestnik, Ronald's brother, and obtained the marijuana for which he was arrested from Frank, who obtained it from Ronald and Newman. Moreover, Ronald was concerned he would have to terminate his drug activities because of Chadwick's arrest.
 
 
 15
 The court concludes Chadwick's prior drug arrest was "inextricably intertwined" with Ronald's drug distribution network and, thus, constituted direct evidence in furtherance of the conspiracy, not prior bad act evidence under Rule 404. United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir.1993). Therefore, we cannot say the trial court abused its discretion by admitting this evidence at trial.
 
 
 16
 b. Admission of coconspirator statements
 
 
 17
 To admit a statement by a coconspirator over a hearsay[1] objection, pursuant to Fed.R.Evid. 801(d)(2)(E),[2] the government must establish, by a preponderance of the evidence, that: "(1) a conspiracy existed, (2) the declarant and the defendant against whom the declarations are offered were members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." Parra, 2 F.3d at 1069. A trial court "may examine both independent evidence and the hearsay statements themselves" when making the requisite findings. Parra, 2 F.3d at 1069. These findings are reviewed for clear error. See United States v. Roberts, 14 F.3d 502, 514 (10th Cir.1993).
 
 
 18
 We acknowledge " '[n]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy.' " Roberts, 14 F.3d at 515 (quoting United States v. Perez, 989 F.2d 1574, 1578-79 (10th Cir.1993) (en banc)). Rather, this decision is fact-specific to each case. See id. In general, a statement furthers a conspiracy if it is " 'intended to promote the conspiratorial objectives.' " United States v. Smith, 833 F.2d 213, 219 (10th Cir.1987) (quoting United States v. Reyes, 798 F.2d 380, 384 (10th Cir.1986)). Examples of statements that further a conspiracy include those which: reveal future intent; encourage continued participation and action within the conspiracy; explain events important to and the current status of the conspiracy; foster trust, reassurance, and cohesiveness among conspiracy members; and identify fellow coconspirators. See id.; Roberts, 14 F.3d at 515.
 
 
 19
 On June 11-12, 1992, pursuant to United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917 (1979), the trial court held a hearing (the James hearing) to determine whether or not a conspiracy existed and if certain statements of Chadwick's coconspirators were made in furtherance of the conspiracy. Evidence introduced at the James hearing included: Chadwick's intercepted telephone calls to Ronald, Ronald's statements to James Robinson that he fronted marijuana to Chadwick and Chadwick was a good drug dealer, Ronald's statement to Newman that one of Chadwick's drug customers owed money, and Newman's testimony that he and Ronald helped Chadwick collect this money which Ronald then used to purchase marijuana. The court ruled from the bench that substantial, independent evidence existed of a conspiracy involving Ronald, Chadwick, and others. In an order dated June 23, 1992, the court found all coconspirator statements made before October 1, 1992, the date Ronald was arrested, to be in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E).
 
 
 20
 Chadwick contends the trial court's rulings were based improperly upon evidence obtained from Ronald after his arrest. Chadwick further contends that, despite its requirement during the James hearing that the government submit a list of all coconspirator statements it wished to have admitted at trial, the trial court allowed the government to introduce hearsay statements at trial that it did not proffer during the James hearing. We find no merit in Chadwick's arguments.
 
 
 21
 Because Chadwick's telephone calls to Ronald, Ronald's statements to Robinson and Newman, and Newman's testimony, sufficiently detail Chadwick's role as a drug dealer for Ronald in a conspiracy to distribute marijuana, the trial court's conclusion that Chadwick was involved in a conspiracy was not clearly erroneous. Having found Chadwick to be a member of a conspiracy, it was proper for the court to admit at trial Ronald's statements, as well as the statements of other coconspirators which may not have been included in the James hearing, if such statements furthered the conspiracy. We find Ronald's statements to Robinson and Newman furthered the conspiracy because they can be fairly construed as inducing continued participation in the conspiracy, explaining important events about the conspiracy, and identifying Chadwick as a coconspirator. Therefore, we find no abuse of discretion by the trial court in admitting these statements at trial.
 
 
 22
 2. Sufficiency of evidence of membership in conspiracy
 
 
 23
 Chadwick next contends there is insufficient evidence to sustain his conviction for conspiracy to distribute marijuana. In considering a challenge to the sufficiency of the evidence, "[w]e review the entire record in the light most favorable to the government to determine whether the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Angulo-Lopez, 7 F.3d 1506, 1510-11 (10th Cir.1993) (quoting United States v. Fox, 902 F.2d 1508, 1513 (10th Cir.), cert. denied, 498 U.S. 874 (1990)), petition for cert. filed, Mar. 3., 1994 (No. 93-8137); accord United States v. Coleman, 7 F.3d 1500, 1502 (10th Cir.1993); United States v. Davis, 1 F.3d 1014, 1017 (10th Cir.1993). Furthermore, we must "accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." Davis, 1 F.3d at 1017.
 
 
 24
 In a conspiracy prosecution, the government must prove: (1) "two or more persons agreed to violate the law," (2) "the defendant knew at least the essential objectives of the conspiracy," (3) "the defendant knowingly and voluntarily became a part of the conspiracy," and (4) "the coconspirators were interdependent." Davis, 1 F.3d at 1017; accord Coleman, 7 F.3d at 1502-03; Angulo-Lopez, 7 F.3d at 1510. The government may prove all of these elements through direct or circumstantial evidence. See Coleman, 7 F.3d at 1503.
 
 
 25
 To establish the element of agreement, the prosecution must show " 'a unity of purpose or a common design and understanding' with coconspirators to accomplish one or more of the objects of the conspiracy." Angulo-Lopez, 7 F.3d at 1510 (quoting United States v. Kendall, 766 F.2d 1426, 1431 (10th Cir.1985), cert. denied, 474 U.S. 1081 (1986)). An agreement may be inferred from " 'frequent contacts' " among the coconspirators and " 'their joint appearances at transactions and negotiations.' " United States v. Evans, 970 F.2d 663, 669 (10th Cir.1992) (quoting United States v. Esparsen, 930 F.2d 1461, 1472 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 882 (1992)), cert. denied, --- U.S. ----, 113 S.Ct. 1288 (1993). However, evidence of association, casual transactions, or a buyer-seller relationship between a defendant and other coconspirators is insufficient. See id.
 
 
 26
 In proving the element of knowledge, the evidence must show the " 'defendant shared a common purpose or design with his alleged coconspirators.' " Id. (quoting United States v. Horn, 946 F.2d 738, 740 (10th Cir.1991)). The prosecution need not establish that a defendant knew of " 'the existence or identity of the other members of the conspiracy or the full extent of the conspiracy' " so long as the defendant had "a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator." Id. at 669-70 (quoting United States v. Metropolitan Enters., 728 F.2d 444, 451 (10th Cir.1984)); see also United States v. Savaiano, 843 F.2d 1280, 1294 (10th Cir.1988) ("A defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role.").
 
 
 27
 The element of interdependence, a highly fact-sensitive issue, may be proven by showing that each coconspirator is dependent upon " 'the operation of each link in the chain to achieve the common goal' " and " 'intended to act together for their shared mutual benefit.' " Angulo-Lopez, 7 F.3d at 1510 (quoting Evans, 970 F.2d at 668, 670). Therefore, "a single conspiracy does not exist solely because many individuals deal with a common central player; they must be interconnected in some way." Evans, 970 F.2d at 670.
 
 
 28
 Chadwick claims the evidence is insufficient to prove any of the conspiratorial elements with respect to him. He also contends the evidence does not establish an overall conspiracy involving all defendants but, rather, multiple conspiracies involving Ronald and several individuals acting alone. Chadwick argues the evidence, at most, establishes only that he bought marijuana from Ronald, not that he had any involvement in a drug conspiracy. We disagree.
 
 
 29
 At Chadwick's trial, the evidence indicated that he: (1) obtained marijuana from Ronald in 1987 to share with two juvenile friends; (2) solicited help from Ronald and Newman in securing money from one of his drug customers in Casper, Wyoming which he owed Ronald and which Ronald then used to purchase marijuana; and (3) held two phone conversations with Ronald in which he asked Ronald for drugs, referred to Ronald's Texas marijuana sources by the code name of "little brothers," and criticized the quality of marijuana he had received from Ronald. Moreover, Robinson, who had transported marijuana for Ronald, testified that Ronald told him Chadwick was a good marijuana dealer.
 
 
 30
 Viewing the record in the light most favorable to the prosecution and giving due deference to the jury's assessment of the evidence, we cannot say a reasonable jury could not have concluded, beyond a reasonable doubt, that Chadwick was a member of a conspiracy to distribute marijuana. We, thus, affirm his conviction.
 
 3. Accuracy of drug quantity calculation
 
 31
 The trial court held a separate evidentiary hearing to determine the drug quantity attributable to Chadwick for purposes of establishing a base offense level for sentencing. Chadwick appeals the trial court's calculations.
 
 
 32
 "A defendant is accountable for the quantity of drugs within the scope of the conspiracy and reasonably foreseeable." United States v. Powell, 982 F.2d 1422, 1435 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2361 (1993). Absent physical evidence, the sentencing court may estimate drug quantity "so long as the information supporting the estimate has a minimum indicia of reliability." McIntyre, 997 F.2d at 709; accord Coleman, 7 F.3d at 1504. A sentencing court's factual determinations of drug quantity used in setting a defendant's base offense level must be supported by a preponderance of the evidence and are reviewed under a clearly erroneous standard. See McIntyre, 997 F.2d at 709; accord Coleman, 7 F.3d at 1504. In examining a district court's finding, "we must look to the evidence of quantity in the record as well as that of relevant conduct, 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction.' " Roberts, 14 F.3d at 519 (quoting United States Sentencing Commission Guidelines Manual Sec. 1B1.3). If we can reasonably reconstruct the district court's calculation, we will not disturb it unless " 'it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made.' " Id. at 519-20 (quoting United States v. Ortiz, 993 F.2d 204, 207 (10th Cir.1993)).
 
 
 33
 There was no physical evidence of drugs associated with Chadwick. Therefore, his sentence was based upon the testimony and estimates of others. A review of the record reveals Ronald told Agent Woodson he had supplied Chadwick with 30 to 50 pounds of marijuana to sell. Agent Woodson did not believe Ronald and opined that he was "minimizing" the amount because Chadwick is his nephew. At his sentencing hearing, even Chadwick dismissed Ronald's estimate, stating he had sold about 100 pounds of marijuana. Robinson testified that, during 1990 and 1991, he delivered approximately 1,200 pounds of marijuana for Ronald. The trial court clarified that this 1,200 pounds was in addition to another 1,200 pounds Robinson had delivered earlier, during 1985 or 1987. Newman testified that, during the time he was involved with Ronald, they transported about 2,000 pounds of marijuana.
 
 
 34
 At Chadwick's sentencing hearing, the trial court reviewed the testimony of Chadwick's coconspirators and a probation officer's calculation of Chadwick's drug quantity as between 2,000 and 4,000 pounds of marijuana. Special Agent Steven Woodson testified Chadwick had been involved with Ronald since 1987 and was one of Ronald's main marijuana distributors. The trial court determined Chadwick was a member of the conspiracy from 1987, the year of his previous drug arrest, until 1991, approximately four years. Although it noted that, as a member of the conspiracy, Chadwick was responsible for the conspiratorial amount,[3] the trial court also recognized the distinction between the drug amount for which Chadwick was personally responsible and the drug amount involved in the conspiracy. In an effort to inject "an element of fairness," the trial court gave Chadwick every benefit of the doubt. Despite finding the conspiracy involved approximately 2,400 pounds of marijuana, after considering all the evidence, the court concluded Chadwick was responsible for 1,000 pounds of marijuana. Having examined the record, we find no clear error in the trial court's drug quantity calculation. Accordingly, we affirm Chadwick's sentence.
 
 CONCLUSION
 
 35
 In sum, we affirm the trial court's admission of Chadwick's 1987 arrest and statements by his coconspirators. Furthermore, based upon our review of the record, we find sufficient evidence to support Chadwick's membership in a conspiracy to distribute marijuana and the trial court's calculation of drug quantity for sentencing purposes.
 
 
 
 *
 The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. See 151 F.R.D. 470
 
 
 [1]
 We have recognized hearsay as
 "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A statement is an "oral or written assertion ... of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a). Hearsay evidence cannot be admitted unless it falls under an exception. Fed.R.Evid. 802.
 McIntyre, 997 F.2d at 698.
 
 
 [2]
 Rule 801(d)(2)(E) provides as follows:
 A statement is not hearsay if--
 * * *
 The statement is offered against a party and is ... (e) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
 
 
 [3]
 Having been found guilty of conspiracy, Chadwick is accountable for the conduct of his coconspirators that was: (1) "in furtherance of the jointly undertaken criminal activity;" and (2) "reasonably foreseeable in connection with that criminal activity." United States Sentencing Commission Guidelines Manual Sec. 1B1.3 n. 2