69 F.3d 548
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Holmes ALEXANDER, Defendant-Appellant.
 No. 94-5154.
 United States Court of Appeals, Tenth Circuit.
 Oct. 27, 1995.
 
 Before MOORE, HENRY, and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT[1]
 JOHN PORFILIO MOORE, Circuit Judge.
 
 
 1
 Michael Holmes Alexander was convicted of conspiracy to possess with intent to distribute and to distribute marihuana in violation of 21 U.S.C. 846 and 841(a)(1). On appeal, Mr. Alexander challenges his conviction and sentence on four grounds. He asserts the district court: (1) failed to strike two prospective jurors for cause; (2) refused to give certain requested jury instructions; (3) miscalculated the drug quantity upon which his sentence was determined; and (4) failed to reduce his offense level although he was a "minor participant" in the conspiracy. Having reviewed the record, and after considering all of the issues raised by Mr. Alexander, we conclude the district court did not err. Accordingly, we affirm.
 
 
 2
 Because the parties are well acquainted with the facts, we will not reiterate them here except where necessary to highlight the issues raised by Mr. Alexander. Between 1985 and 1993, Mr. Alexander was involved in the distribution of large quantities of marihuana. In 1993, Mr. Alexander and ten others were indicted for conspiracy to possess with intent to distribute and to distribute 1,000 kilograms or more of marihuana (Count 1). They were also charged with possession with intent to distribute 67.7 pounds of marihuana (Count 2). Only Mr. Alexander proceeded to trial as all his coconspirators pled guilty. At Mr. Alexander's trial, James Van Over, the central figure in the conspiracy, and several other members of the conspiracy, testified for the government. Ultimately, Mr. Alexander was convicted on the first count and acquitted on the second. He was sentenced to a term of 121 months.
 
 
 3
 First, Mr. Alexander argues the district court forced him to exhaust his peremptory challenges on two prospective jurors who should have been struck for cause. The first was a former police officer with 29 years of experience in law enforcement. The second admitted to the district court he was uncertain whether he could be impartial because his son was a drug addict.
 
 
 4
 Mr. Alexander argues that failing to excuse a prospective juror who exhibits actual bias during voir dire is reversible error if it causes a diminution of peremptory challenges. United States v. Daly, 716 F.2d 1499, 1507 (9th Cir.1983), cert. dismissed, 465 U.S. 1075 (1984). However, Mr. Alexander offers no evidence of the first prospective juror's actual bias other than the fact he was a police officer.
 
 
 5
 Our decision in United States v. McIntyre, 997 F.2d 687, 697-98 (10th Cir.1993), cert. denied, 114 S.Ct. 736 (1994), holds a prospective juror's prior membership on a police force, standing alone, is insufficient to warrant an automatic dismissal for cause. There, we found no basis for disqualification because the trial court had thoroughly examined the juror and was satisfied he would be impartial. Id. See also Mikus v. United States, 433 F.2d 719, 724 (2d Cir.1970) (membership on a police force is not grounds for automatic dismissal from a criminal jury).
 
 
 6
 In Mr. Alexander's case, upon further questioning by the district court, the juror stated he would not find a police officer's testimony more credible than any other testimony, and he averred that he could be objective and impartial. The district court's inquiries, which counsel failed to mention, sufficiently explored the juror's potential bias.
 
 
 7
 Mr. Alexander argues the second prospective juror's initial uncertainty about his ability to be fair and impartial was evidence of actual bias. However, although not disclosed by counsel, the record reveals the district court continued to question the juror to clarify his response. The following exchange took place:
 
 
 8
 THE COURT: Do you feel that as you hear the evidence in this case that close family experience would permeate your thought processes as you are evaluating the evidence of guilt or innocence in this case?
 
 
 9
 JUROR: I think not, but I still felt obligated to tell you.
 
 
 10
 Thus, as with the first juror, the district court explored the potential bias and partiality of this juror.
 
 
 11
 We review the district court's refusal to strike a juror for cause for an abuse of discretion. United States v. McIntyre, 997 F.2d 687, 697 (10th Cir.1993), cert. denied, 114 S.Ct. 736 (1994). The district court must "properly test the qualifications and competency of the prospective jurors to sit on trial of the case." United States v. Bedonie, 913 F.2d 782, 795 (10th Cir.1990) (quoting United States v. Hill, 526 F.2d 1019, 1025 (10th Cir.1975), cert. denied, 425 U.S. 940 (1976)), cert. denied, 501 U.S. 1253 (1991). After reviewing the record, we conclude the district court conducted a thorough examination of both prospective jurors and made an informed determination of their ability to remain impartial. We therefore hold the court's denial of Mr. Alexander's challenges for cause was not an abuse of discretion.
 
 
 12
 Mr. Alexander next argues the district court improperly denied his requested jury instructions. He contends the district court should not have refused his instructions on the agreement element of the conspiracy. He also urges the district court erred by not allowing his instructions on the knowing and voluntary participation element of the conspiracy. Finally, he states the district court failed to give a multiple conspiracy charge.
 
 
 13
 In support of his first two arguments, Mr. Alexander states, "a litigant is entitled to have a trial judge tell the jury of his claims and theory of law, if stated succinctly and without argument." Brown v. Addressograph-Multigraph Corp., 300 F.2d 280, 282 (6th Cir.1962). He argues because his instructions were substantively correct, the district court should have allowed them.
 
 
 14
 We disagree. The district court is not required to give a proposed jury instruction, even though it is substantively correct, if "the point of law it refers to is fairly and adequately otherwise covered by the instructions." Oertle v. United States, 370 F.2d 719, 726 (10th Cir.1966), cert. denied, 387 U.S. 943 (1967).
 
 
 15
 Mr. Alexander contends the trial judge should have informed the jury that mere association and casual transactions between members of the Van Over conspiracy and Mr. Alexander were insufficient to meet the agreement element of the conspiracy charge. However, in addition to the general conspiracy charge, the court instructed that "[p]roof of the existence of a buyer-seller relationship without more is inadequate to tie the buyer to a larger conspiracy." We think the district court's instructions adequately explained the legal standard for the agreement element.
 
 
 16
 Even if the instruction did not adequately address the insufficiency of mere associations and casual transactions, Mr. Alexander did not present any evidence of such attenuated contacts. Instead, the evidence reveals a more pervasive relationship between Mr. Alexander and the Van Over organization. Indeed, Mr. Alexander himself indicated the extent of his association with the conspiracy. During a tape-recorded meeting with Bobby Joe McPeek, Mr. Alexander stated that he had known the Van Over family from the very beginning and had worked with everyone in the organization.
 
 
 17
 Mr. Alexander also urges the district court should have instructed the jury that "mere knowledge of illegal activity, even in conjunction with participation in a small part of the conspiracy" is not enough to meet the knowing and voluntary participation element of the conspiracy charge. He cites United States v. Evans, 970 F.2d 663, 669 (10th Cir.1992), cert. denied, 113 S.Ct. 1288 (1993), in which we used essentially the same language in our discussion of the knowing and voluntary participation element of a conspiracy charge.
 
 
 18
 However, in Evans, we used this language to caution that general awareness of illegal activity is not enough to convict a defendant of a conspiracy that "defies common sense." Id. For example, a small time drug dealer who is aware that his supply can be traced to the Medellin cartel, cannot be held responsible for all of the drugs of the cartel for sentencing purposes. We further stated the knowing and voluntary participation element of a conspiracy is met if a defendant has "a general awareness of both the scope and the objective of the enterprise." Id.
 
 
 19
 Certainly, the evidence adduced at trial revealed Mr. Alexander had more than a general awareness of the illegal activity. Indeed, the evidence showed Mr. Alexander knew the scope and objectives of the conspiracy and actively participated in achieving those objectives.
 
 
 20
 The district court instructed that "to participate knowingly and willfully means to participate voluntarily and understandingly and with a specific intent to do some act the law forbids." These instructions sufficiently conveyed the knowing and voluntary element of the conspiracy charge.
 
 
 21
 We review jury instructions de novo to determine whether, as a whole, the instructions "state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir.1988) (quoting Ramsey v. Culpepper, 738 F.2d 1092, 1098 (10th Cir.1984)). The instructions must cover the issues presented by the evidence and accurately state the law. United States v. Davis, 953 F.2d 1482, 1492 (10th Cir.) (citing United States v. Pena, 930 F.2d 1486, 1492 (10th Cir.1991)), cert. denied, 504 U.S. 945 (1992). Reversal is warranted only when the failure to give an instruction is prejudicial in view of the entire record. United States v. Martin, 18 F.3d 1515, 1519 (10th Cir.), cert. denied, 115 S.Ct. 187 (1994). Viewing the jury instructions as a whole, we find that the instructions on both the agreement element and the knowing and voluntary element of the conspiracy charge adequately furnished the jury with proper understanding.
 
 
 22
 Mr. Alexander's argument that the district court erred in declining to give a multiple conspiracy charge also lacks merit. In this circuit, failure to instruct the jury on a multiple conspiracy count is not reversible error unless the court fails to instruct the jury that "the government had the burden of proving beyond a reasonable doubt the [single] conspiracy as alleged, and that the evidence should be considered separately as to each individual defendant." United States v. Evans, 970 F.2d 663, 675 (10th Cir.1992) (quoting United States v. Watson, 594 F.2d 1330, 1340 (10th Cir.1979), cert. denied, 444 U.S. 840 (1979)) (alteration in original), cert. denied, 113 S.Ct. 1288 (1993). The record reveals the jury was instructed on the government's burden of proof on the conspiracy charge and that the evidence against Mr. Alexander must be considered separately. Therefore, we hold the district court did not commit reversible error in failing to give a multiple conspiracy charge.
 
 
 23
 Mr. Alexander also insists the district court erred in determining the drug quantity attributable to him for sentencing purposes.[2] He asserts, first, James Van Over's testimony was unreliable. Second, the other coconspirators gave contradictory testimony. Third, the amount of marihuana attributed to him was inconsistent in light of the district court's factual findings regarding the amount of marihuana attributable to Gustavo Izabal-Duran, James Van Over's major supplier.
 
 
 24
 Mr. Alexander attacks the credibility of James Van Over. However, this court has stated that we "especially defer to the lower court's fact-finding where the issue concerns a witness's credibility." United States v. Ortiz, 25 F.3d 934, 935 (10th Cir.1994) (citing United States v. Litchfield, 959 F.2d 1514, 1523 (10th Cir.1992); See also United States v. Deninno, 29 F.3d 572, 578 (10th Cir.1994) ("[w]itness credibility at sentencing is a question for the district court"), cert. denied, 115 S.Ct. 1117 (1995).
 
 
 25
 In United States v. Browning, 61 F.3d 752 (10th Cir.1995), the defendant argued, as Mr. Alexander does here, that the district court erred in relying on the testimony of certain witnesses. The defendant insisted the witnesses were unreliable because they provided only quantity estimates, had incentives to minimize their own culpability, and a few had prior criminal records. Id. at 754. This court upheld the district court, noting it had made explicit findings of reliability after considering the character and mental condition of the witnesses.
 
 
 26
 In this case, the court recognized the evidence regarding the drug quantities was based upon the testimony of cooperating government witnesses. However, the court found sufficient corroborating evidence to support this testimony. At the sentencing hearing, the court stated:
 
 
 27
 We [ ] recognize that the determination of amount is based upon testimony often of corroborating or cooperating government witnesses, and that's what took place today. However, based upon the testimony at trial and the testimony today, the information set forth in the addendum filed by the Probation Office to the presentence report, and all of the other sources available to the Probation Office and set forth in its addendum, this Court finds that sufficient evidence has been submitted to the Court to establish the amount estimated by the Probation Office at 4,000 pounds.
 
 
 28
 Because the district court made a careful and informed credibility determination, we defer to that court's finding regarding the credibility of James Van Over.
 
 
 29
 Mr. Alexander also argues the amounts of marihuana attributed to him by the government's witnesses were contradictory and unreliable. He asserts the district court improperly relied on the estimates of these witnesses.
 
 
 30
 When given several plausible estimates, the drug quantity determined by the district court must rest on the preponderance of the evidence. United States v. Reid, 911 F.2d 1456, 1462 (10th Cir.1990), cert. denied, 498 U.S. 1097 (1991). Furthermore, the court must err on the side of caution. United States v. Ortiz, 993 F.2d 204, 208 (10th Cir.1993).
 
 
 31
 James Van Over, the central figure in the conspiracy, testified at trial he had supplied between 4,000 and 8,000 pounds of marihuana to Mr. Alexander over the course of the eight-year conspiracy. Notwithstanding the contradiction between the testimony of two coconspirators, Bobby Joe McPeek and Gary Underwood, the witnesses at trial presented corroborating evidence to establish quantities well in excess of the 4,000 pounds of marihuana ultimately attributed to Mr. Alexander. In sum, the preponderance of the evidence supports the district court's drug quantity determination.
 
 
 32
 Mr. Alexander further contends the amount of marihuana attributed to him is inconsistent with the district court's prior factual findings at Gustavo Izabal-Duran's sentencing. All of the marihuana distributed to Mr. Alexander came from James Van Over. James Van Over testified that his major supplier was Gustavo Izabal-Duran. If Gustavo Izabal-Duran distributed less than 2,200 pounds of marihuana to James Van Over, as the court found at Gustavo Izabal-Duran's sentencing hearing, Mr. Alexander contends it was impossible for Mr. Alexander to have distributed 4,000 pounds of marihuana. Mr. Alexander urges further that it is even unlikely that he received 2,200 pounds of marihuana because he was not James Van Over's only buyer.
 
 
 33
 In spite of the discrepancy between the district court's finding that Gustavo Izabal-Duran distributed less than 2,200 pounds of marihuana and the same court's finding that Mr. Alexander distributed 4,000 pounds, we cannot say that the government did not show by the preponderance of the evidence that Mr. Alexander distributed at least 4,000 pounds of marihuana. In fact, we believe the district court made a conservative estimate of the drug quantity attributable to Mr. Alexander. A defendant is usually responsible for "all quantities ... with which he was directly involved, and ... all reasonably foreseeable quantities ... that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. 1B1.3. See also United States v. Coleman, 7 F.3d 1500, 1504 (10th Cir.1993). At Mr. Alexander's sentencing, however, only marihuana quantities delivered or seized en route to Mr. Alexander were attributed to him. Moreover, the court stated:
 
 
 34
 [T]he evidence would substantiate an amount in excess of that [4,000 pounds], but the only amount the Court is addressing and will address is the 4,000 pounds. And I would say that sufficient indicia of reliability has been established to support its probable accuracy, the probable accuracy of the 4,000 pounds and that the government has met its burden in that regard, it's burden of reliability.
 
 
 35
 The district court's factual findings concerning drug quantities are reviewed under a clearly erroneous standard. United States v. Richards, 27 F.3d 465, 468 (10th Cir.1994). After a review of the trial record, the presentence report, and the sentencing hearing record, we conclude the drug quantity determined by the district court was not clearly erroneous because the information used to establish the drug quantities had a "sufficient indicia of reliability." See id. (quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir.1993), cert. denied, 114 S.Ct. 1404 (1994)).
 
 
 36
 Finally, Mr. Alexander argues he was entitled to a two-level decrease in his sentence because he was a "minor participant" in the conspiracy. He urges the court wrongfully relied on the quantity of marihuana distributed by Mr. Alexander in determining his role in the conspiracy. He cites United States v. Webster, 996 F.2d 209, 212 (9th Cir.1993), in which the Ninth Circuit stated that the issue is whether the defendant is less culpable than most other participants in the conspiracy.
 
 
 37
 Mr. Alexander mischaracterizes the district court's finding. In its determination that Mr. Alexander was not entitled to minor participant status, the court relied on his involvement in the conspiracy, not merely the quantity of drugs distributed by Mr. Alexander.
 
 
 38
 We review the district court's factual findings concerning a defendant's role in an offense for sentencing purposes under a clearly erroneous standard. United States v. Santistevan, 39 F.3d 250, 253 (10th Cir.1994). The district court's interpretation of the Sentencing Guidelines is reviewed de novo. United States v. Pinedo-Montoya, 966 F.2d 591 (10th Cir.1992).
 
 
 39
 The Sentencing Guidelines describe a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. 3B1.2(b), comment. (n.3). The culpability determination is a question of fact for the district court. United States v. Lord, 907 F.2d 1028, 1031 (10th Cir.1990).
 
 
 40
 At Mr. Alexander's trial, the evidence showed he participated in multiple distributions of large quantities of marihuana and made approximately $400,000 in profit during his eight-year involvement in the conspiracy. Moreover, Mr. Alexander himself revealed the scope of his knowledge and involvement during a tape-recorded meeting between Mr. Alexander and Bobby Joe McPeek. During that conversation, Mr. Alexander discussed his knowledge of the drug market in Florida and stated he had customers who would purchase 10-30 pounds of marihuana on a regular basis. He also mentioned he was aware that several members of the Van Over family were involved in the conspiracy and that he had known the family since the beginning. A review of this evidence does not suggest Mr. Alexander was less culpable than his coconspirators. Thus, we cannot say the district court's denial of a two-level reduction in Mr. Alexander's sentence level was clearly erroneous.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 After a pre-sentencing hearing, the district court agreed with the probation office's assessment that Mr. Alexander was responsible for distributing at least 4,000 pounds of marihuana