UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Carlos ANGULO–LOPEZ,
Defendant–Appellant.

No. 92–6370.

United States Court of Appeals,
Tenth Circuit.

Oct. 26, 1993.

---

**1508**

Kim Taylor, and Leslie M. Kaestner, Asst. U.S. Attys. (John E. Green, U.S. Atty., with them on the brief), Oklahoma City, OK, for plaintiff-appellee.

Susan M. Otto, Acting Federal Public Defender, Oklahoma City, OK, for defendant-appellant.

Before BRORBY, BARRETT, and KELLY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Juan Carlos Angulo–Lopez [1] was convicted of eleven separate counts of drug trafficking, including conspiracy to distribute cocaine base, distribution of cocaine, and manufacture of cocaine base. Mr. Angulo–Lopez was sentenced, inter alia, to two concurrent terms of life imprisonment. He appeals asserting the disparity in sentences under the United States Sentencing Guidelines between powdered cocaine and cocaine base is violative of the Fifth and Eighth Amendments. He also claims insufficiency of the evidence on the conspiracy charge, and the district court improperly computed his offense level. We affirm.

The thrust of the Government's case was that Mr. Angulo–Lopez and his common law wife, Teresa Griffin, directed, operated, and retained profits from a cocaine distribution business. The two principals based in Houston with assistance from numerous other individuals charged in the conspiracy would: (1) transport multi-kilogram quantities of cocaine powder and cocaine base (crack) into the Oklahoma City area; (2) transport cash proceeds from the drug business to and from Oklahoma City; (3) convert cocaine powder into crack; and (4) distribute cocaine powder and crack in multi-kilogram quantities to their resellers in Oklahoma City. The operation involved fourteen participants charged as conspirators who allegedly distributed 47.82 kilograms of cocaine base.

**I**

Mr. Angulo–Lopez, who is black, asserts the disparity in sentences between cocaine and cocaine base falls with disparate impact on blacks. Mr. Angulo–Lopez points out that in the Anti–Drug Abuse Act of 1986, Congress equated one kilogram of crack to 100 kilograms of powdered cocaine for the purpose of sentencing. *See* U.S.S.G. § 2D1.1(C) (Drug Quantity Tables). At the sentencing hearing, Mr. Angulo–Lopez presented an associate professor of sociology who testified that in the Western District of Oklahoma blacks are defendants in 94.39% of all criminal cases involving crack. Therefore, Mr. Angulo–Lopez argues, the penalties imposed upon crack distributors fall with a disparate impact on a discrete racial group and thereby violate Mr. Angulo–Lopez' Equal Protection rights as guaranteed by the Fifth Amendment. Although Mr. Angulo–Lopez does not challenge the facial neutrality of the guidelines, he argues the practical result of their application discriminates against blacks as they are more likely to possess crack than other racial groups. Our review of federal constitutional questions is de novo. *United States v. Buckner,* 894 F.2d 975, 978 (8th Cir.1990).

---

1. The following appeals emanated directly from the prosecution in which Juan Carlos Angulo–Lopez was convicted:

*United States v. McGee,* No. 92–6348
*United States v. Coleman,* No. 92–6356
*United States v. King,* No. 92–6363
*United States v. Ricorte Angulo–Lopez,* No. 92–6364
*United States v. Preciado,* No. 92–6371
*United States v. Griffin,* No. 92–6375

For us to apply a strict scrutiny standard of review, Mr. Angulo–Lopez would have to allege more than a disproportionate impact, he must show a *discriminatory purpose. See United States v. Galloway,* 951 F.2d 64, 65 (5th Cir.1992). " '[E]ven if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose.' " *United States v. Easter,* 981 F.2d 1549, 1559 (10th Cir.1992) (quoting *Personnel Adm'r v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979)), *cert. denied,* —— U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993). Because the record lacks any evidence indicating Congress possessed discriminatory motives in creating the sentencing distinction between powdered cocaine and crack, and other courts, upon examining the legislative history have discovered no race-based animus, we recognize the discrepancy was created without any racial bias. *See United States v. Frazier,* 981 F.2d 92, 95 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993); *Galloway,* 951 F.2d at 65–66. Therefore, the sentencing disparity is subject only to rational basis review. *Frazier,* 981 F.2d at 95.

This Circuit has repeatedly upheld the validity of the statutory distinction in the sentencing levels between powdered cocaine and cocaine base as rational. *See Easter,* 981 F.2d at 1559; *United States v. Robinson,* 978 F.2d 1554, 1565 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993); *United States v. Turner,* 928 F.2d 956, 958–60 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). Mr. Angulo–Lopez asks us to distinguish his claim from the existing Tenth Circuit cases since he substantiated his claim of disparate impact with statistical evidence, whereas the defendants in the other cases did not. "Numerical impact, of course, may not alone support a finding of invidious discrimination in a facially neutral

law." *United States v. Reece,* 994 F.2d 277, 278 (6th Cir.1993). The proper focus of the analysis is not on the statistically disparate impact but rather on whether Congress had a rational basis for creating such a distinction. Other circuits have also joined our determination that Congress indeed had rational justification in creating the sentencing disparity.[2] *See Frazier,* 981 F.2d at 95; *Galloway,* 951 F.2d at 65–66; *United States v. Lawrence,* 951 F.2d 751, 754–56 (7th Cir. 1991); *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir.1991); *United States v. Thomas,* 900 F.2d 37, 39–40 (4th Cir.1990); *Buckner,* 894 F.2d at 978–90; *United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989); *United States v. Malone,* 886 F.2d 1162, 1166 (9th Cir.1989); *United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988); *United States v. Collado–Gomez,* 834 F.2d 280, 280–81 (2d Cir.1987), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Consequently, we reject Mr. Angulo–Lopez' Equal Protection claim.

## II

Mr. Angulo–Lopez asserts the punishment of life imprisonment without the possibility of parole violates the Eighth Amendment prohibition against cruel and unusual punishment as it is disproportionate to his offense. The evidence established that Mr. Angulo–Lopez was involved in a conspiracy to distribute 47.82 kilograms of cocaine base.[3] In *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality of the Supreme Court upheld a sentence of life without the possibility of parole for possession of 650 grams of cocaine against an Eighth Amendment challenge. The Court, however, could not reach a consensus on whether a proportionality review should exist, or the appropriate standards to apply when reviewing a sentence for proportionality. Thus, *Harmelin* provides no guidance in articulating the proper approach for an Eighth Amendment review. Nevertheless,

---

*United States v. Martinez–Perez,* No. 92–6376
*United States v. Barber,* No. 92–6380.

**2.** For instance, rational justifications for the sentence disparity might include the distinguishing factors that crack is more addictive and more

readily accessible in small quantities than powdered cocaine. *See, e.g., Pickett,* 941 F.2d at 418.

**3.** Pursuant to U.S.S.G. § 3D1.2(d), all counts are grouped for offense level computations.

because the Court affirmed a sentence of life imprisonment for the possession of 650 grams of powdered cocaine in *Harmelin,* we can logically assume that the defendant's life sentence for masterminding a conspiracy involving 47.82 kilograms of crack cocaine does not violate the Eighth Amendment.

Prior to *Harmelin,* the Supreme Court held that the Eighth Amendment analysis requires a three-step proportionality review. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). "A court's ... analysis ... should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011. In *Solem,* the Supreme Court invalidated a state statute that prescribed life imprisonment without parole when applied to a recidivist with a series of nonviolent prior offenses. Without determining whether *Harmelin* overruled *Solem,* we will address Mr. Angulo–Lopez' proportionality concerns under *Solem.* Although Mr. Angulo–Lopez does not challenge the second and third criteria under *Solem,* he asserts that the harshness of the punishment does not reflect the gravity of the offense. The evidence before the trial court at sentencing establishes the rapid addiction of crack users. The gravity of the offenses of manufacturing and distributing crack is quite severe. No doubt thousands of lives have been ruined and even lost as a result of crack use and dependence. Harsher penalties for crimes involving crack regularly survive Eighth Amendment proportionality review. *Frazier,* 981 F.2d at 95–96; *United States v. House,* 939 F.2d 659, 664 (8th Cir.1991); *Buckner,* 894 F.2d at 980–86; *Cyrus,* 890 F.2d at 1248. Therefore, the sentence of life imprisonment without parole is not disproportionate to the crime of conspiracy to distribute 47.82 kilograms of cocaine base under Eighth Amendment analysis.

### III

Mr. Angulo–Lopez asserts the evidence is insufficient to sustain the conspiracy conviction. Specifically, Mr. Angulo–Lopez argues the evidence establishes only a series of unrelated cocaine transactions as the people involved acted only for their individual interests. Mr. Angulo–Lopez claims the evidence fails to show the conspirators acted in concert for the mutual benefit, and thus the government failed to prove the critical issue of interdependence.

■ A conspiracy conviction requires the Government to prove, that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, that the defendant knowingly and voluntarily became a part of it, and that the alleged coconspirators were interdependent. *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). To establish that Mr. Angulo–Lopez agreed to participate in the conspiracy, the Government's evidence must show "a unity of purpose or a common design and understanding" with coconspirators to accomplish one or more of the objects of the conspiracy. *United States v. Kendall,* 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). The agreement must also demonstrate the essential element of interdependence. *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.) (citing *United States v. Dickey,* 736 F.2d 571, 582 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985)), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). "Interdependence is present when 'each alleged coconspirator ... depend[s] on the operation of each link in the chain to achieve the common goal.' " *Evans,* 970 F.2d at 670 (citation omitted). "The conduct of the alleged coconspirators, including the defendant, may be diverse and far-ranging, but it must be interdependent in some way." *United States v. Horn,* 946 F.2d 738, 740 (10th Cir.1991). "What is needed is proof that [the conspirators] intended to act together for their shared mutual benefit within the scope of the conspiracy charged." *Evans,* 970 F.2d at 671.

The existence of the interdependence element in a conspiracy conviction is a fact sensitive issue. "We review the entire rec-

ord in the light most favorable to the government to determine whether the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Fox,* 902 F.2d at 1513. In the case before us, we examine whether a reasonable jury could have found the participants in the conspiracy acted with interdependence, since that is the element challenged by the appellant.

■ The evidence establishing the interdependence of the conduct of the participants in this conspiracy is overwhelming. Mr. Angulo–Lopez, a previously deported Colombian, masterminded the operation and focused his efforts on obtaining the quantities of cocaine. In his capacity as leader of the conspiracy, he recruited, paid, and directed the activities of people to transport the cocaine from Houston to Oklahoma City; he set the prices for which the drugs would be sold and made numerous drug deals; he hired drug and money couriers and supervised their activities; he participated in and supervised the distribution of the drugs to the wholesalers; he converted the powdered cocaine to crack; he collected debts for the drugs; and, in short, controlled the organization in nearly every respect.

The evidence shows a large scale cocaine distribution business that procured cocaine in Houston, transported it to Oklahoma, and distributed it to wholesalers and retailers. The organization included couriers, drivers, owners of safe houses, cooks, distributors, and even brokers. Each participant had an integral role in this illegitimate business. Mr. Angulo–Lopez' conduct was so integral to the success of the operation, that he even paid for an attorney to represent a conspirator who was arrested. The record shows the participants recognized Mr. Angulo–Lopez as their leader and supervisor. Therefore, the evidence before the jury sufficiently established the activities of the participants were united in purpose and conducted for their mutually shared benefit, and were therefore interdependent.

## IV

Prior to sentencing, a presentence report was prepared which stated Mr. Angulo–Lopez had distributed cocaine in both its powdered and base forms. Because the intent of the conspirators was to distribute the cocaine as cocaine base, the presentence report recommended converting the quantity of powdered cocaine involved to cocaine base for the purpose of sentencing. The sentencing court agreed and found the conspirators routinely converted the powder to crack, and provided "cooking" instructions for coconspirators when necessary. Accordingly, Mr. Angulo–Lopez was then sentenced for the quantity of cocaine base ultimately distributed.

■ On appeal, Mr. Angulo–Lopez contests the conversion of the powdered cocaine to cocaine base for sentencing purposes. Mr. Angulo–Lopez also contends that he was improperly assigned an amount of cocaine base which was distributed and "cooked" solely by his coconspirators. We review a sentencing court's factual determinations under a clearly erroneous standard. *United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991).

■ According to U.S.S.G. § 2D1.4 (1991), "[i]f a defendant is convicted of a conspiracy or an attempt to commit an offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." The district court made the factual determination that the cocaine powder involved in the conspiracy was routinely converted to crack. The eventual conversion was foreseeable to, if not directed by, Mr. Angulo–Lopez. Under the guidelines, it is proper to sentence a defendant under the drug quantity table for cocaine base if the record indicates that the defendant intended to transform powdered cocaine into cocaine base. *See United States v. Paz,* 927 F.2d 176, 180 (4th Cir.1991); *United States v. Haynes,* 881 F.2d 586, 592 (8th Cir.1989). The record supports the district court's findings that Mr. Angulo–Lopez intended the powdered cocaine to be converted into crack.

Turning to Mr. Angulo–Lopez' contention that he was sentenced for drugs distributed independently by other members of the conspiracy, we repeat one of the fundamental principles of conspiracy law. "One of the measures employed in determining the severity of a drug conspiracy offense is the amount of narcotics involved in the entire conspiracy, not just the amount with which the defendant dealt personally." *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989). The defendant is held responsible for all reasonably foreseeable transactions. *Id.* Our review of the record reveals that the district court correctly determined that the cocaine distributed and crack manufactured by the conspiracy was foreseeable to Mr. Angulo–Lopez as the leader of the conspiracy, and thus we find no sentencing computation error.

The judgment and sentence of the district court are **AFFIRMED.**

No. 92–6375.

