**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ENRIQUE ENRIQUEZ,

    Defendant-Appellant.

No. 96-6185
(D.C. No. CR-96-15-L)
(Western District of Oklahoma)

———————————————

**ORDER AND JUDGMENT**[*]

———————————————

Submitted on the Briefs:

———————————————

Before **SEYMOUR,** Chief Judge, **PORFILIO,** Circuit Judge, and **MURPHY,** Circuit Judge.

———————————————

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Enrique Enriquez was convicted of conspiracy to possess with intent to distribute and to distribute marihuana under 21 U.S.C. § 846 and extortion under 18 U.S.C. § 894. He was sentenced to two concurrent terms of 104 months. Defendant appeals, raising issues relating to the sufficiency of the evidence and sentencing. We affirm.

The critical evidence against the defendant was presented essentially through the testimony of Kirby Kyles, a former confederate in the drug business, and tape recordings of telephone conversations between them. Mr. Enriquez contends the evidence of his participation in the charged conspiracy was insufficient because the government failed to prove when the defendant became a member of the conspiracy, with whom he conspired, and when he possessed marihuana with intent to distribute. He maintains the evidence of extortion was devoid of proof that his extortionate acts were committed to collect an extension of credit as required by § 894(a)(1). Our review of the record indicates these arguments are without foundation.

Kirby Kyles testified he had purchased marihuana from the defendant and a "Mexican organization here in Oklahoma City" since the summer of 1995. Kyles stated the organization was headed by "a Mexican male, Raymond, last name unknown." When arrested, Kyles owed the organization $120,000 for marihuana he purchased from the Mexican organization and sold.

Kyles obtained marihuana from the organization under a practice he identified as a "week to two week front." Kyles would receive from 50 to 200 pound shipments of marihuana which he would package and sell to others. Those customers would, in turn, sell the contraband and pay Kyles at a later date. Within one to two weeks after receiving his shipment, Kyles would pay Raymond the money he owed on the "front." Kyles defined "the front" as "buy[ing] on credit."

After Kyles' arrest for dealing in marihuana, defendant visited him in his place of business to collect the $120,000. On that occasion, Mr. Enriquez was driving a vehicle Kyles had seen driven by Raymond and known to Kyles as an automobile "the organization used for some time."

In telephone conversations between Kyles and defendant, Mr. Enriquez made efforts to get Kyles to pay the $120,000 debt he owed Raymond. In one such conversation, after Kyles asked for some forbearance on payment, defendant said Raymond might be agreeable, but "there's somebody top of him and then somebody top of that other guy and ah, you know how it goes, it [sic] a big old chain that ah . . . never finish [sic]."

We are satisfied from this evidence the government established defendant conspired with Kyles, Raymond, and others to possess for sale and to sell marihuana and that defendant was a knowing and voluntary participant in the conspiracy. This

sufficiently established his guilt. *United States v. Angulo-Lopez*, 7 F.3d 1506, 1510 (10th Cir. 1993).

Next, defendant challenges the sufficiency of the evidence of extortion. Although the original intent of Congress in passing 18 U.S.C. § 894 may have been to deter loan sharking, the language employed in the law reaches beyond that nefarious conduct. Indeed, the statute makes illegal the knowing participation in the use of extortionate means to collect "**any** extension of credit." (Emphasis added.) An extension of credit is defined to include "any agreement . . . whereby the repayment or satisfaction of any debt . . . may . . . be deferred." 18 U.S.C. § 891(1). The explicit language of this statute makes clear the debt itself does not have to be valid because the essential aspect of the offense is the use of extortionate means of collection. *United States v. Briola*, 465 F.2d 1018, 1021, (10th Cir. 1972).

Mr. Enriquez admits the evidence demonstrated he exercised extortionate conduct, but he maintains it failed to show he did so to force payment of an extension of credit. He suggests Kyles merely received the marihuana "on consignment," and no credit was extended to him. Notwithstanding there is no evidence in the record to support that suggestion, there is ample evidence of defendant's guilt.

First, there was Kyles' own testimony that goods were shipped to him under terms of what he specifically defined as a credit transaction. Next, although the telephone conversations between defendant and Kyles were semi-cryptic, there is enough said

between the two from which the jury could infer the existence of a debt owed by Kyles to Raymond arising from the shipment of marihuana. Finally, during those conversations, defendant several times set deadlines for payment which he later postponed, demanding payment after the expired deferred date. We believe these constituted sufficient evidence showing the existence of an extension of credit within the meaning of the statute. *United States v. Goode,* 945 F.2d 1168, 1170 (10th Cir. 1991).

Defendant next argues the district court erred by using a prior uncounseled conviction in Texas for driving while intoxicated to enhance his sentence in this case. He contends even though the offense was a misdemeanor, he was entitled to counsel because he was sentenced to seven days' incarceration. Citing *Nichols v. United States*, 511 U.S. 738 (1994), defendant argues the enhancement was invalid.

After *Nichols*, we held: "prior uncounseled misdemeanor convictions that are themselves constitutional may be used to enhance punishment for subsequent convictions." *United States v. Lockhart*, 37 F.3d 1451, 1454 (10th Cir. 1994). Once the government establishes the existence of a conviction, "the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." *United States v. Windle*, 74 F. 3d 997, 1001 (10th Cir. 1996) (citing *United States v. Johnson*, 973 F.2d 857, 862 (10th Cir. 1992)). Moreover, a record indicating counsel was waived in the predicate misdemeanor case is sufficient, in the absence of contrary allegations, to make the conviction constitutionally valid for enhancement purposes. *Id.*

In this case, the record includes documentation of defendant's written and sworn waiver of counsel. In the statement, the defendant swears he knows "the dangers and disadvantages of representation of himself . . . that he knows what he is doing, and that he does this after full explanation of his rights . . . [to] an attorney in all proceedings herein," and certifies that he is "financially able to employ counsel and is not indigent." Yet, defendant now argues under Texas law at the time of his conviction he was not entitled to appointed counsel; therefore, he could not waive a right he did not have.

Although that argument is irrelevant in light of defendant's own sworn statement he was not indigent and was able to employ counsel, we believe defendant has not shown the waiver invalid or that the conviction was constitutionally infirm. The Sixth Amendment right about which the constitutional issue here revolves is the right of an indigent accused to the appointment of counsel. No violation of the Sixth Amendment occurs when a well informed defendant who can afford to do so elects not to retain counsel and enters a plea without representation. We believe defendant's argument is without substance, and the district court did not err by using the misdemeanor conviction to enhance the sentence.

Finally, defendant argues the counts of conviction should have been grouped for the purpose of sentencing under U.S.S.G. § 3D1.2. Because both counts were part of "a common criminal objective"; the extortion count was an overt act cited in the conspiracy

count; and there was only one victim, defendant maintains the district court erred by refusing to group the counts.

The guideline mandates grouping when there is but one victim and all criminal transactions are "connected by a common criminal objective" or are part of a "common scheme or plan." First, as the government points out, Kyles was not a victim of the conspiracy, he was one of the conspirators. Kyles, however, was the victim of the extortion. Therefore, the first step of § 3D1.2 is never reached, and the offenses of conviction did not require grouping.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge