**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

JOSE MARTINEZ, DANIEL
RICHARD AROS, and UMBERTO
JURADO-BARAJAS, a/k/a Felix
Francisco Garcia,

   Defendants-Appellants.

Nos. 03-8000, 03-8008, 03-8011

(D. Wyoming)

(D.C. No. 02-CR-039-J)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case therefore is ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This appeal arises from the joint trial of the three defendants, each of whom were named in a superseding indictment. We have consolidated their appeals for the purpose of this disposition. On May 17, 2002, the defendants were charged with one count of conspiracy to traffic in methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (count I).

**1. Mr. Aros and Mr. Martinez**

On October 7, 2002, a jury trial commenced as to count I for Daniel Aros and Jose Martinez. The trial also involved Mr. Jurado-Barajas, and several co-defendants who are not before us in this appeal.

On October 15, 2002, the jury returned guilty verdicts as to Mr. Aros and Mr. Martinez on count I. On December 23, 2002, the district court sentenced Mr. Aros to 188 months' imprisonment, five years of supervised release, and a special assessment of $100. Mr. Martinez was likewise sentenced to 188 months' imprisonment, five years of supervised release, and a special assessment of $100.

**2. Mr. Jurado-Barajas**

Mr. Jurado-Barajas was also charged with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)((A), and 18 U.S.C. § 2 (aiding and abetting) (count II), and with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §

924(c)(1)(A)(i) (count IV).[1]  Mr. Jurado-Barajas pleaded guilty to counts I and II of the superseding indictment and was found guilty at trial of count IV.  Mr. Jurado-Barajas was sentenced to 188 months' imprisonment on counts I and II, to be served concurrently, and to a consecutive 60 months imprisonment, a $2,000 fine, and five years of supervised release on count IV.

On appeal, the defendants raise the following issues:

Mr. Aros:

1.    the evidence presented at trial was insufficient to connect him to the charged conspiracy, and the government failed to prove that he was dependent upon his co-conspirators for his supply of methamphetamine;

2.    the district court erred in failing to sever his case from his co-conspirators;

Mr. Aros and Mr. Martinez:

3.    the district court erred when it admitted various out-of-court statements into evidence under Fed. R. Evid. 801(d)(2)(E) because they were not made in furtherance of the conspiracy;

---

[1]  The superseding indictment dated May 17, 2002, lists only three counts, yet the parties indicate that a fourth count was charged, and later dismissed, against Mr. Jurado-Barajas.  Aplts' App. vol. I, att.1.

4.   the district court erred when it instructed the jury regarding the amount of methamphetamine involved in the conspiracy as a whole;

5.   the district court's factual findings regarding the drug amounts "reasonably foreseeable" to each defendant for sentencing purposes were "clearly erroneous;"

Mr. Martinez:

6.   the district court erred when it enhanced his sentence for possession of a firearm in connection with a drug offense;

Mr. Jurado-Barajas:

7.   the district court clearly erred when it found that he was a manager/supervisor of a criminal activity involving five or more participants within the meaning of USSG § 3B1.1(b).

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the convictions and sentences of each defendant.


I. BACKGROUND

We recite the relevant facts in the light most favorable to the government because the jury convicted the defendants. *See United States v. Duran*, 133 F.3d 1324, 1326 n.1 (10th Cir. 1998). From the early part of 2001 until his arrest in

early February 2002, Mr. Jurado-Barajas was involved in a substantial methamphetamine trafficking organization centered in and around Gillette, Wyoming. During most of this period, Mr. Jurado-Barajas resided in a trailer house located in the Nepstad Trailer Park in Gillette, although he sometimes used a separate apartment as well.

When authorities executed search warrants on these residences, they seized approximately five pounds of methamphetamine, $13,000 in cash, weighing scales, packaging materials, drug ledgers, and a firearm from his trailer, and approximately three pounds of methamphetamine, more than $62,000 in cash, and weighing scales from his apartment. The methamphetamine was contained in vacuum-type packaging.

Mr. Jurado-Barajas sold methamphetamine to various individuals including Nadine Decker, Mrs. Decker's husband, and Stacey Larson. Ms. Larson testified that the methamphetamine sold by Mr. Jurado-Barajas and later by her, came from a source in California named "Baltazar." Baltazar would give the methamphetamine to co-defendant Hector Lopez and to Mr. Jurado-Barajas while the three met in Mr. Jurado-Barajas' trailer in Gillette, Wyoming.

Numerous individuals were involved with the conspiracy. Kirk Buckman, Mr. Aros' roommate, testified he received methamphetamine from Mr. Aros on two occasions. Kenneth Powers testified that he met Mr. Aros in the summer of

2001 and purchased methamphetamine from him three to four times a week. Jessica Friesen testified that, during the winter of 2001, she began using and selling methamphetamine that she had received from Mr. Aros. She also met Mr. Martinez and saw him with Mr. Aros frequently. She testified that she declined Mr. Martinez' requests for her to sell drugs for him, citing her friendship with Mr. Aros.

Jennifer Dobkins testified that she sold methamphetamine received from Mr. Aros a couple of times. She testified that Mr. Aros told her he hoped to drive Mr. Martinez out of business by lowering his prices for methamphetamine.

Upon his arrest, Mr. Aros told authorities that he had distributed approximately fifteen pounds of methamphetamine in the Gillette area, and at trial he admitted to supplying Mr. Powers, Ms. Dobkins, and Ms. Friesen with methamphetamine. He at first denied that Mr. Martinez was his source but on cross-examination, Mr. Aros admitted Mr. Martinez was his source and that he was trying to put Mr. Martinez out of business.

## II. DISCUSSION

**A. Sufficiency of the Evidence as to Mr. Aros' Involvement in the Conspiracy**

1. Standard of Review

In considering a challenge to the sufficiency of the evidence, "[w]e review the entire record in the light most favorable to the government to determine whether the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Angulo-Lopez*, 7 F.3d 1506, 1510-11 (10th Cir. 1993) (quoting *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990)); *accord United States v. Coleman*, 7 F.3d 1500, 1502 (10th Cir. 1993); *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993). Furthermore, we must "accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." *Davis*, 1 F.3d at 1017.

In a conspiracy prosecution, the government must prove: (1) "two or more persons agreed to violate the law," (2) "the defendant knew at least the essential objectives of the conspiracy," (3) "the defendant knowingly and voluntarily became a part of the conspiracy," and (4) "the co-conspirators were interdependent." *Davis*, 1 F.3d at 1017. The government may prove all of these elements through direct or circumstantial evidence. *Coleman*, 7 F.3d at 1503; *see also United States v. Brown*, 200 F.3d 700, 708 (10th Cir. 1999) ("Circumstantial evidence is often the strongest evidence of conspiracy.").

To establish the element of agreement, the prosecution must show "'a unity of purpose or a common design and understanding' with co-conspirators to

accomplish one or more of the objects of the conspiracy." *Angulo-Lopez*, 7 F.3d at 1510 (quoting *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir. 1985)). An agreement may be inferred from "'frequent contacts'" among the co-conspirators and "'their joint appearances at transactions and negotiations.'" *United States v. Evans,* 970 F.2d 663, 669 (10th Cir. 1992) (quoting *United States v. Esparsen*, 930 F.2d 1461, 1472 (10th Cir. 1991)). However, evidence of association, casual transactions, or a buyer-seller relationship between a defendant and other co-conspirators is insufficient. *Id.*

The element of interdependence, a highly fact-sensitive issue, may be proven by showing that each co-conspirator is dependent upon "'the operation of each link in the chain to achieve the common goal'" and "'intended to act together for their shared mutual benefit.'" *Angulo-Lopez*, 7 F.3d at 1510 (quoting *Evans*, 970 F.2d at 670, 671). Therefore, "a single conspiracy does not exist solely because many individuals deal with a common central player; they must be interconnected in some way." *Evans*, 970 F.2d at 670. Moreover, "[t]he defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." *United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998).

2. Analysis

Mr. Aros claims the evidence is insufficient to prove the essential element of interdependence. He claims the only evidence presented was packaging material seized from his apartment and hearsay statements from uncharged co-conspirators.

The evidence at trial indicated that Mr. Aros' participation in the conspiracy was dependent upon Mr. Martinez. First, Mr. Aros' roommate, Kirk Buckman, testified that during the summer of 2001, Mr. Aros had more cash on him than usual despite having lost his job. Mr. Martinez soon began visiting the apartment approximately every other day. After an apparent dispute, Mr. Martinez did not return often to the apartment. Mr. Buckman stated that he used and obtained methamphetamine from Mr. Aros, and that he distributed methamphetamine from that he received from Mr. Aros on two occasions.

Jessica Friesen, who entered a guilty plea in exchange for immunity from prosecution, testified that she bought methamphetamine from Mr. Aros approximately every day from October/November 2001 until the end of January 2002, and that in the aggregate she purchased 2.5 to 3 pounds of methamphetamine from him.

Ms. Friesen also testified that she saw Mr. Aros and Mr. Martinez together about once a week. She testified that Mr. Martinez asked her twice if she wanted to sell drugs for him, and each time she said no, because she preferred to go

"through [Mr. Aros]." Aplt's App. vol. IV, at 320. Ms. Friesen also testified that Mr. Aros was going "through" Mr. Martinez, meaning he was obtaining methamphetamine from Mr. Martinez. She also testified that Mr. Aros stated he was trying to get better prices from somebody else, and that Mr. Martinez was "ripping him off." *Id.* at 322.

Jennifer Dobkins testified she met Mr. Aros in December 2001. She stated she sold methamphetamine, which she received from Mr. Aros, a couple of times. According to her testimony, Mr. Aros retrieved the drugs from a file cabinet next to his bed. She also testified that Mr. Aros had told her he was trying to take Mr. Martinez out of business by lowering his prices for methamphetamine.

Stacey Larson, who pleaded guilty to conspiracy to possess with intent to deliver and to deliver methamphetamine, testified that she had been receiving and selling methamphetamine for Mr. Jurado-Barajas. She testified regarding several transactions in which she was contacted by various individuals in which she delivered methamphetamine from a large bag given to her by Mr. Lopez. She received cash in return and kept track of the transactions on a ledger.

While Mr. Jurado-Barajas was in Mexico, she updated the ledgers and, at Mr. Jurado-Barajas' request, attempted to collect money from various persons, including Mr. Martinez who "owed money for methamphetamine transactions." *Id.* vol. III, at 172. Ms. Larson testified that she received a call from Mr. Martinez asking to meet. During their meeting, he asked to purchase

methamphetamine, and she delivered two ounces to him after he paid her for the contraband. She also testified that she tried to collect the $6,000 outstanding debt owed to Mr. Jurado-Barajas from Mr. Martinez without success. *See id.* at 210 and Ex. 401.

Kenneth Powers, who pleaded guilty to conspiracy to deliver methamphetamine, testified that he purchased methamphetamine "about every day" from Mr. Aros. *Id.* vol. IV, at 332. Mr. Powers testified that he began to resell the contraband, and over the course of ten months, he bought approximately two pounds of methamphetamine from Mr. Aros. Mr. Powers also testified that when he attempted to make a purchase during February 2002, Mr. Aros explained that his connection "got busted." *Id.* at 336. The government notes that Mr. Jurado-Barajas was arrested on February 6, 2002. Mr. Powers testified that he bought approximately three pounds from Mr. Aros overall, and that Mr. Aros was his only source of methamphetamine.

Upon his arrest, Mr. Aros told authorities that he had distributed approximately fifteen pounds of methamphetamine in the Gillette area, and at trial that these fifteen pounds came from Mr. Martinez, and that he made $2,000 a week from selling the drug. Mr. Aros admitted to selling methamphetamine to at least three people. *See* Aplt's App. vol. 5, at 585-86. Authorities seized packaging with a white residue from Mr. Aros' bedroom.

At trial, Mr. Aros testified that he knew Mr. Martinez and Mr. Lopez and that Mr. Aros and Mr. Martinez had occasionally smoked methamphetamine together. He admitted to supplying Mr. Powers, Ms. Dobkins, and Ms. Friesen with methamphetamine, but denied that Mr. Martinez was his source. He testified his source was Facunda Navarette in Laramie, and that Mr. Navarette supplied him with two to three pounds of methamphetamine. On cross-examination, Mr. Aros admitted Mr. Martinez was his source and that he was trying to put Mr. Martinez out of business. He admitted what he had earlier told the agents, but indicated that he exaggerated the amounts in hopes of being released by the authorities.

"The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." *United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998). Upon review of the record, we conclude that the evidence from the above witnesses, and from Mr. Aros himself, presented the jury with sufficient evidence to support its verdict that Mr. Aros was dependent upon "the operation of each link in the chain to achieve the common goal" and "intended to act together for their shared mutual benefit." *Angulo-Lopez*, 7 F.3d at 1510 (internal quotation marks omitted).

**B. Improper Joinder**

Mr. Aros next contends that he was prejudiced by improper joinder   He also maintains that, although he did not move to sever either before or during his trial, that we should review de novo the court's refusal to sever sua sponte. Ordinarily, we would review the denial of a motion to sever for an abuse of discretion, *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999), but here we review for plain error.  *United States v. Torres*, 53 F.3d 1129, 1141 (10th Cir. 1995).  In order to show plain error in this context, Mr. Aros must demonstrate that he was so "obvious[ly]" "and substantial[ly]" prejudiced as a result of his joint trial that the district court should have granted a severance "sua sponte." *United States v. Iiland*, 254 F.3d 1264, 1269 (10th Cir. 2001).

As outlined above, there was ample evidence to support the jury's findings that Mr. Aros was involved in drug transactions with both Mr. Martinez and with the other charged co-conspirators.  Because the evidence necessarily overlapped with the evidence against his co-defendants, joinder was proper.  *See United States v. Killip*, 819 F.2d 1542, 1547 (10th Cir. 1987) ("Joinder is clearly proper under Fed. R. Crim. P. 8(b), because the Government alleged that [the defendant] had 'participated in the same . . . series of acts or transactions' as the other defendants.") (quoting Fed. R. Crim. P. 8(b)).  There was no plain error here.

**C. Admission of the Co-conspirator Statements**

Mr. Aros and Mr. Martinez both challenge the district court's admission into evidence various statements by co-conspirators. Under Federal Rule of Evidence 801(d)(2)(E), co-conspirator statements are not considered hearsay and are thus properly admitted if the district court finds, by a preponderance of the evidence, that (i) "a conspiracy existed," (ii) "both the declarant and the defendant against whom the declaration is offered were members of the conspiracy," and (iii) the statement "was made in the course of and in furtherance of the conspiracy." *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999) (internal quotation marks omitted).

Mr. Aros and Mr. Martinez appear to challenge each element. The challenged testimony included statements from Ms. Dobkins that Mr. Aros told her he was trying to run co-defendant Mr. Martinez, out of business "by lowering [Aros'] prices of methamphetamines." Aplt's App. vol. IV, at 387. Also challenged were Ms. Friesen's statements that Mr. Aros' source was Mr. Martinez and that Mr. Aros was considering going to someone other than Mr. Martinez to get "better prices." *Id.* at 322. In addition, Mr. Aros challenges the statement by Mr. Powers that Mr. Aros had told him that his connection "got busted." *Id.* at 336.

Mr. Aros states that the testimony only suggested that Mr. Aros and Mr. Martinez were at some point competitors, but the statements in no way furthered

-14-

the conspiracy. Prior to the admission of the disputed evidence, the district court held a hearing, outside the presence of the jury, and found that there was sufficient evidence of a conspiracy between Mr. Aros and Mr. Martinez and that the challenged statements were made in furtherance of this conspiracy. As discussed above, the jury found beyond a reasonable doubt that Mr. Aros and Mr. Martinez were participants in the conspiracy. The evidence at trial was sufficient to sustain this verdict. Having reviewed the entire record, we hold that the district court's factual findings in this regard were not clearly erroneous and that it did not abuse its discretion in admitting the challenged statements under Federal Rule of Evidence 801(d)(2)(E).

Mr. Martinez also asserts that the admission of these statements violated his Sixth Amendment right to confront witnesses against him by denying him the ability to confront the witness making the statement. Aplt's Br. at 9. Because we hold that the evidence in this case meets the requirements for admission under Rule 801(d)(2)(E), it also satisfies the requirements of the Confrontation Clause. *See United States v. Molina*, 75 F.3d 600, 603 (10th Cir. 1996) (recognizing that "the requirements for admission of evidence under Federal Rule of Evidence 801(d)(2)(E) are identical to the requirements of the Confrontation Clause, so if the evidence meets the requirements of Rule 801(d)(2)(E), the evidence is constitutionally admissible").

**D. Challenge to Instruction 32**

Mr. Martinez and Mr. Aros next challenge that Instruction 32 violated their right to an individual determination of the evidence regarding drug amounts reasonable foreseeable to them.[2] "We review de novo a timely challenge to a jury

_____

[2] Instruction 32 provided in part as follows:

If you find the defendants guilty of conspiracy to distribute and possession with the intent to distribute methamphetamine, as charged in Count One of the Superseding Indictment, then you must also determine the amount of methamphetamine involved in the conspiracy. The substantive charge of conspiracy requires the government to prove beyond a reasonable doubt that the conspiracy involved only a measurable amount of methamphetamine. When, as in this case, an indictment alleges the conspiracy involved more than a measurable amount of methamphetamine, the government is required to prove an amount beyond a reasonable doubt. You do not have to find the exact amount of methamphetamine involved. The government is required to prove beyond a reasonable doubt that the conspiracy involved the distribution or possession with the intent to distribute: (A) 500 grams or more of methamphetamine; or (B) at least 50 grams but less than 500 grams of methamphetamine; or (C) at least a measurable amount but less than 50 grams of methamphetamine. On the verdict form you will be asked to mark which of these amounts you find has been proved beyond a reasonable doubt. Your finding must be unanimous.

. . . .

Methamphetamine distributed or possessed by other members of the conspiracy must be reasonably foreseen as a necessary or natural consequence of the agreement. This does not require proof that each co-conspirator specifically agreed or knew that an actual amount of methamphetamine would be distributed or possessed by all members of the conspiracy. But, *the government must prove that the amount of methamphetamine distributed or possessed by other members of the conspiracy was reasonably foreseeable to a defendant. No defendant is responsible for the acts of others going beyond the reasonably foreseeable scope of the conspiracy.* If, however, you find that the government has proved beyond a reasonable doubt a defendant could have reasonably foreseen the methamphetamine distributed or possessed by other members of the conspiracy, you are instructed to add those amounts to the amount of methamphetamine you find, beyond a reasonable doubt, the defendant personally distributed or

(continued...)

-16-

instruction to determine whether, considering the instructions as a whole, the jury was misled." *United States v. Guidry*, 199 F.3d 1150, 1156 (10th Cir. 1999) (internal citations omitted). We reverse only when we "have substantial doubt that the jury was fairly guided." *Id.* (internal citations omitted).

We agree with the Government's argument that Instruction 32 was given to satisfy *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and did not contravene that case as Mr. Aros contends. The jury was instructed to make specific findings regarding the amount of drugs attributable to the conspiracy. But the instruction also provided that the government must prove that the amount of methamphetamine distributed or possessed by the conspiracy was an amount that was reasonably foreseeable to the individual defendant. In addition, any alleged *Apprendi* errors did not affect the defendants' substantial rights: the maximum sentence either defendant could have received is twenty years (240 months), *see* 21 U.S.C. § 841(b)(1)C), and sentences falling within the twenty-year maximum sentence do not require an *Apprendi* determination as to drug quantity. *See United States v. Wilson*, 244 F.3d 1208, 1215 n.4 ("*Apprendi* is not violated if a defendant's sentence falls within the twenty-year maximum sentence of 21 U.S.C.

---

[2](...continued)
possessed.

Aplt's App. vol. I, doc. 194, Instr. 32 (emphasis added).

§ 841(b)(1)(C)" because the jury "need only determine specific quantity *if* it leads to sentences beyond the maximum for mere possession.").

**E. Relevant Conduct Determination as to Each Defendant**

Mr. Aros and Mr. Martinez each challenge the district court's calculation of drug quantity at sentencing.  At sentencing, "[t]he government has the burden of establishing by a preponderance of the evidence the quantity of drugs for which a defendant is responsible." *United States v. Green*, 175 F.3d 822, 836-37 (10th Cir. 1999).  We will uphold the district court's calculation of drug quantity unless that calculation is clearly erroneous.  *Id.* at 837.

The Sentencing Guidelines provide that a court may consider relevant information without regard to its admissibility under the rules of evidence so long as the information has "sufficient indicia of reliability to support its probable accuracy."  USSG. § 6A1.3; *see also United States v. Fennell*, 65 F.3d 812, 813 (10th Cir. 1995) (stating that "reliable hearsay may be used in the determination of a sentence").  "When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level, so long as the information relied upon has some basis of support in the facts of the particular case, and bears sufficient indicia of reliability." *United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996) (internal quotation marks omitted).  Thus, if the ledgers introduced

into evidence and the testimony at trial possess sufficient indicia of reliability, the district court properly based its estimate of relevant drug quantity on those sources.

### 1. Mr. Aros

Based upon the PSR's relevant conduct determination of at least 5 kilograms but less than 15 kilograms of methamphetamine, Mr. Aros' guideline level was 36. He had a criminal history category of I, which set his guideline range for imprisonment at 188-235 months. The district court sentenced Mr. Aros to 188 months' imprisonment, five years of supervised release, and a special assessment of $100.

Mr. Aros contends that at most the government has shown by a preponderance of the evidence that he possessed and distributed 2.7 kilograms of methamphetamine, which would reduce his base level by two points. He also disputes the district court's adoption of the PSR without further proof of the quantities alleged therein.

The district court heard and considered evidence when it determined relevant conduct. Mr. Aros' own testimony indicated that: (1) he told law enforcement agents that he had distributed 15 pounds of methamphetamine; (2) that Mr. Martinez was his source; and (3) that he was indeed guilty of conspiracy, just not of this conspiracy. *See* Rec. vol. V, at 599-602; 628. Clearly the district

-19-

court did not simply adopt the presentence report as its only finding. *See United States v. Yarnell*, 129 F.3d 1127, 1137 (10th Cir. 1997). The district court's determination of relevant conduct was not in error.

### 2. Mr. Martinez

Mr. Martinez contends that the district court clearly erred when it found relevant conduct to support a guideline level of 34. He maintains that the only evidence produced to show the quantity were two drug ledgers that indicate that he owed Mr. Jurado-Barajas the sum of $6,000 for between six and twelve ounces of the drug. *See* Rec. vol. X, at 84. That quantity would support a sentencing range of 78-97 months. The district court sentenced Mr. Martinez to 188 months' imprisonment, five years of supervised release, and a special assessment of $100.

The district court carefully considered the evidence before it. The PSR determined Mr. Martinez' relevant conduct involved more than 5 kilograms but less than 15 kilograms of methamphetamine. Mr. Martinez received a two-level firearm enhancement that raised his guideline level to 38, and with a criminal history category of I, his sentencing range was 235-293 months.

The district court did not adopt the PSR, but determined Mr. Martinez' relevant conduct involved more than 1.5 kilograms. It first considered a drug ledger from Mr. Jurado-Barajas' trailer that referred to Mr. Martinez. Mr. Martinez' inclusion on the ledger tied him to the amount seized from the trailer,

which was approximately 1,721.72 grams.  The court also concluded that the evidence at trial proved 400 grams.  We hold that the district court's finding that Mr. Martinez' relevant conduct involved more than 1.5 kilograms was appropriate and was not clear error.

### F. Enhancement for Possession of a Firearm under USSG § 2D1.1(b)(1)

Mr. Martinez challenges the court's finding that there was a temporal and spatial relationship between the weapon, the drug trafficking activity, and himself, to support a two-level enhancement of his sentence.  We review factual findings under § 2D1.1(b)(1) for clear error, giving due deference to the application of the guidelines to the facts.  *United States v. Pompey*, 264 F.3d 1176, 1180 (10th Cir. 2001).  "The [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  USSG § 2D1.1(b)(1), cmt., n.3.

"The government bears the initial burden of proving possession by a preponderance of the evidence." *Pompey*, 264 F.3d at 1180.  This burden may be satisfied by showing that there is a temporal and spatial relationship between the weapon, the drug trafficking activity, and the defendant.  *Id.*  Once the government has met its burden, the defendant must show "that it is clearly improbable the weapon was connected with the offense."  *Id.*  "[T]he focus of §

2D1.1(b)(1) is whether [defendant] possessed a firearm in connection with the offense to which he pleaded guilty." *United States v. Dickerson*, 195 F.3d 1183, 1188 (10th Cir. 1999).

Mr. Martinez contends that there is no evidence that any drug activity took place in his apartment where the unloaded Colt .803 semiautomatic pistol was recovered from the top drawer of a dresser from his bedroom. The government recovered no drugs, cash, or drug paraphernalia from Mr. Martinez' apartment. There is no evidence that the gun was loaded or that any ammunition was seized.

The government points to testimony regarding drug use in the apartment, and that Mr. Martinez asked Ms. Friesen to sell drugs for him while she was in the apartment as evidence of temporal and spatial proximity to drug trafficking. The government also relied upon the presence of a foodsaver sealer in the apartment, and a plastic baggie that had Mr. Martinez' fingerprints on it, as evidence of drug packaging material.

In this case, the government had only to show the Colt .803 was possessed during, or was discovered in a place where the conspiracy was carried out or furthered. Indeed, although there was no evidence to show Mr. Martinez carried, brandished, loaned, accessed, or held the weapon during any drug transaction or that the weapon was present or nearby, the uncontroverted evidence that he possessed a dangerous weapon, USSG § 2D1.1(b)(1), during the course of the conspiracy, overrides. The district court did not err when it determined that he

possessed it in a location where some of the activities of the drug conspiracy occurred.

The district court also noted that as an illegal immigrant, Mr. Martinez should not have had a gun. Aplt's App. vol. X, at 103. "The only conceivable reason would be in connection with the activity that was taking place." *Id.* The district court concluded that Mr Martinez did not meet "the threshold to establish that it's clearly improbable that the gun had nothing to do with the controlled substance." *Id.* We hold that the district court's application of USSG § 2D1.1(b)(1) was not clearly erroneous.

**G. Mr. Jurado-Barajas' Challenge to USSG § 3B1.1(b) Enhancement for His Role as Manager/Supervisor**

Mr. Jurado-Barajas raised only one issue on appeal: whether the district court erred in finding that he was a manager/supervisor of a criminal activity involving five or more participants within the meaning of USSG § 3B1.1(b). Under the Sentencing Guidelines, a district court may impose a three-level increase in a defendant's offense level where the criminal activity involved five or more participants and the defendant played a managerial or supervisory role. USSG § 3B1.1(b). We review the district court's determination that a defendant was a manager or supervisor of criminal activity for clear error. *United States v. VanMeter*, 278 F.3d 1156, 1166 (10th Cir. 2002).

We conclude from a review of the record that the district court properly found that Mr. Jurado-Barajas met the requirements for a three-level increase. The government showed by a preponderance of the evidence that there were at least five participants in the drug dealing. Based on the fact that it was Mr. Jurado-Barajas' trailer and nearby apartment that were the center of this activity and that Mr. Jurado-Barajas planned much of the activity, the district court did not commit clear error in finding that he was a supervisor or manager of the operation.

## III. CONCLUSION

Accordingly, we AFFIRM the convictions and sentences of each defendant

Entered for the Court,

Robert H. Henry
Circuit Judge